**Adnan MUHANNA, Petitioner**

v.

\* **Alberto R. GONZALES, Attorney General of The United States; Bureau of Citizenship and Immigration Services, Respondents.**

\* **Substituted pursuant to Rule 43c, F.R.A.P.**

No. 03–4754.

United States Court of Appeals, Third Circuit.

Submitted pursuant to Third Circuit LAR 34.1(a) on Dec. 7, 2004.

Filed March 3, 2005.

---

Melvin R. Solomon, Parsekian and Solomon, P.C., Hackensack NJ, for Petitioner.

Peter D. Kiesler, Assistant Attorney General, Civil Division, David V. Bernal, Assistant Director, Russell J.E. Verby,

(Argued), Office of Immigration Litigation, United States Department of Justice, Washington D.C., for Respondent.

Before AMBRO and VAN ANTWERPEN, Circuit Judges, and SHADUR, Senior District Judge.[1]

## OPINION OF THE COURT

SHADUR, District Judge.

Adnan Muhanna ("Muhanna") appeals the affirmance by the Board of Immigration Appeals ("BIA") of the decision by Immigration Judge ("IJ") Annie Garcy (1) finding that Muhanna knowingly filed a frivolous asylum application and is thereby rendered permanently ineligible by 8 U.S.C. § 1158(d)(6)[2] to receive any benefits under United States immigration laws and (2) denying Muhanna's applications for withholding of removal and for protection under the United Nations Convention Against Torture, and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Convention"). Because we conclude that the IJ's failure to adhere to the administrative regulations regarding frivolous findings resulted in a denial of due process, we grant Muhanna's petition for review of the BIA's order and remand Muhanna's case to the BIA.

### Background

Following his marriage to an American citizen in Ramallah in 1995, Muhanna en-tered the United States on October 17, 1996 as a conditional permanent resident.[3] After living in the United States for a time with his wife, Muhanna obtained a divorce from Islamic authorities in Ramallah on September 23, 1998. Because he had failed to file a joint application for the removal of the conditions on his permanent residency as required by Section 1186a(c)(1)(A) during his marriage, on December 7, 1999 Muhanna applied to the Immigration and Naturalization Service ("INS") for a waiver under Section 1186a(c)(4)(B). Under that provision an alien's failure to file a joint petition for the removal of the conditions on permanent residency may be excused if the alien shows that the marriage qualifying him for conditional status was entered into in good faith but has been terminated and if the alien was not at fault in failing to file the petition. Muhanna's application for the good faith marriage waiver was denied by the INS on September 1, 2000.

On November 27, 2000 the INS commenced removal proceedings against Muhanna, asserting the termination of his conditional status. In the course of those proceedings Muhanna admitted the factual allegations put forth by the INS and conceded that he was removable, but he asked the IJ to review the denial of his good faith marriage waiver and presented evidence that in addition to the divorce from

1. The Honorable Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

2. All further references to provisions of Title 8 will simply read "Section—."

3. While the IJ's decision and the Government's brief state that Muhanna is a native of Jordan ("born in Jordan"), Muhanna's own brief states that he was "born on February 20, 1969 in Mukmas, Palestine." No city or village spelled in that fashion appears in the *Times Atlas of the World* (10th ed.1999), but it does show Mukhmās as a village approximately eight miles northeast of Jerusalem and 5 miles east of Ramallah in the West Bank of Israel, commonly known as the Occupied Palestinian Territories. It is unclear why the Government and the IJ consider him a native of Jordan, but in any event Muhanna views himself as a stateless Palestinian. That difference does not impact the present appeal, but it would bear looking into if Muhanna were ultimately to be ordered removed from the United States.

Islamic authorities in Ramallah he had obtained a divorce from a New Jersey court. On June 15, 2001, following several master calendar hearings and continuances, Muhanna also filed applications for asylum, withholding of removal and protection under the Convention, all based on the ongoing conflict between Israeli and Palestinian forces in the Middle East. In particular he related several incidents of persecution he and his family had endured. Muhanna was warned of the consequences of filing a frivolous asylum application.

At an August 14, 2001 master calendar hearing the IJ set the case for a merits hearing and stated she would bifurcate the proceedings:

> So maybe we'll have to do the [waiver application] first and then if I don't grant the waiver we can move on to the asylum application....And then we would do that, I suppose, on some other day.

When the merits hearing began on June 10, 2002, however, the IJ said she was going to address both the waiver application and the asylum application. Although Muhanna's counsel responded that he was prepared to address only the waiver application and that he did not take on Palestinian asylum cases as a matter of principle, the IJ replied:

> Well I don't know what your principle is, but we may end up doing this case. We'll see how it goes today.

In response to questions posed by his counsel, Muhanna testified regarding his marriage, his arrival in the United States and his divorce. Following some testimony that was somewhat inconsistent on those matters, the IJ sought to determine whether the fear of living in Ramallah that Muhanna asserted as the basis for his asylum application predated his marriage. She asked whether a stabbing to which Muhanna had referred in the asylum application (he there claimed that his Jewish employer in Ramallah had stabbed him on May 6, 1996) occurred before or after his marriage. Muhanna initially responded, "Nobody stabbed me," but he then said he had been stabbed by a man named Mohammed when he tried to break up a fight. Warning Muhanna that his answer was inconsistent with his asylum application and also warning him of the consequences of filing a frivolous asylum application, the IJ allowed Muhanna to confer with counsel. After he then did so, Muhanna showed the IJ a major scar on his arm wholly consistent with his having been stabbed, testified—consistently with his asylum application—that the stabbing had in fact been inflicted by his Jewish employer, and he explained that he had lied earlier during the hearing because he was afraid that if his employer discovered his testimony he would be harmed if he were sent back to Ramallah.

Conceding that she had "stumbled onto [the] line of inquiry" regarding the asylum application while initially addressing only the waiver application, the IJ halted the proceedings and made a finding under Section 1158(d)(6) that Muhanna's asylum application was frivolous, making him ineligible to receive any immigration benefits. That finding was expressly based entirely on the inconsistency between his hearing testimony and the original asylum application as to the stabbing incident. On that ground the IJ found Muhanna's asylum application was "a crystal-clear case of a fabricated [application] that is frivolous in every respect." She further concluded that because the information regarding the stabbing was "the most important, decisive information that there could be about [Muhanna's] experiences in his country ... [, its] materiality ... [was] undeniable."

Based on that finding of frivolousness, the IJ held Muhanna ineligible for the

good faith marriage waiver, for asylum and for voluntary departure. She further denied his applications for withholding of removal and protection under the Convention on the ground that he was not credible and ordered that he be removed to Jordan. After the BIA then affirmed the IJ's decision without opinion, Muhanna timely filed this appeal.

█ We have jurisdiction to review final orders of removal pursuant to Section 1252(a)(1) (*Mulanga v. Ashcroft*, 349 F.3d 123, 131 (3d Cir.2003)). And where as here the BIA affirms the IJ's decision without opinion, "we review the IJ's opinion and scrutinize its reasoning" (*Dia v. Ashcroft*, 353 F.3d 228, 245 (3d Cir.2003) (en banc)).

### Muhanna's Due Process Claim

█ It has been established for more than a century that aliens are entitled under the Fifth Amendment to due process of law in removal proceedings (*Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)). Due process requires three things in the context of those proceedings (*Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir.2001)(internal quotation marks and citations omitted)):

> An alien: (1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his or her interests.

Muhanna's due process claim centers on the first and second of those rights, and he argues that they were violated in two ways.

█ First, Muhanna makes much of the fact that the IJ addressed his asylum application in the course of a hearing that he believed was being held only to address his good faith marriage waiver application. He claims that the "sua sponte change in plans" left him and his counsel unprepared to proceed with the asylum claim. But that argument cannot prevail. IJs are entitled to "broad (though not uncabined) discretion over the conduct of trial proceedings" so long as those proceedings do not amount to a denial of the fundamental fairness to which aliens are entitled (*see Aguilar–Solis v. INS*, 168 F.3d 565, 568 (1st Cir.1999); *Iliev v. INS*, 127 F.3d 638, 643 (7th Cir.1997)). Though counsel indicated he would not pursue Muhanna's asylum claim for personal reasons, the IJ's frivolousness finding brought an abrupt halt to the proceedings so that the issue never arose. Moreover, the initial counsel's reluctance would not necessarily have blocked consideration of the asylum claim, because it appears that one of his partners would have been available to do so, perhaps later that same day. And even accepting that Muhanna and his counsel were unprepared to address the asylum claim, we cannot say that it was fundamentally unfair for the IJ to question Muhanna about an incident described in an asylum application that Muhanna himself had filed almost one year earlier. Because that incident could be viewed as relevant to his good faith marriage waiver application insofar as it may have given Muhanna an ulterior motive for marrying an American citizen, thus calling into question whether that marriage was entered in good faith, the IJ's inquiry was not itself a denial of due process.[4]

4. Muhanna also argues that but for the "procedural error" he could have prevailed on his waiver application and avoided addressing the asylum application, an argument that suggests he was prejudiced by having to address the asylum application at all. Surely that cannot be the basis for a Fifth Amendment violation—no alien has a due process right to

■ Muhanna's second argument is that the IJ's frivolousness finding under Section 1158(d)(6) was infirm due to her failure to make the factual findings mandated by that statute's implementing regulation. At the outset it is important to recognize the severe consequences that attach to a frivolousness finding. Section 1158(d)(6) provides that "[i]f the Attorney General determines that an alien has knowingly made a frivolous application for asylum" after receiving notice of the consequences of doing so, "the alien shall be permanently ineligible for any benefits" under the immigration laws. One of the "most extreme provisions" in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, the bar once imposed "may not be waived under any circumstances" (Austin T. Fragomen, Jr., et al, *Immigration Legislation Handbook* § 8:96 (database updated April 2004)). Muhanna urges that because the IJ imposed that "death sentence" on his immigration prospects without giving him ample opportunity to present his case, she thereby denied him due process of law in violation of the Fifth Amendment. We agree.

Section 1158(d)(6)'s implementing regulation, 8 C.F.R. § 208.20, provides:

> For purposes of this section, an asylum application is frivolous if any of its material elements is deliberately fabricated. Such finding shall only be made if the immigration judge or the Board is satisfied that the applicant, during the course of the proceedings, has had sufficient opportunity to account for any discrepancies or implausible aspects of the claim.

Here the IJ concluded that the stabbing incident's materiality was "undeniable" because it was "the most important, decisive information there could be about the re- spondent's experiences in his country." But an assessment of whether that particular incident was a "material element" of Muhanna's asylum application is impossible because the IJ refused to consider the application in its entirety. Rather than address the numerous claims of persecution Muhanna apparently set out in his asylum application, the IJ instead halted the proceedings, declaring that Muhanna was "someone who is not honest at all" and whose asylum application was "frivolous in every respect."

It is also important to note that the finding that Muhanna deliberately fabricated the stabbing incident in the asylum application fails to take into account the nature of the evidence and of his admittedly shifting versions of the event. It appears from the record that something happened to Muhanna: In the course of the hearing he showed the IJ a large scar he stated came from a stab wound. And the explanation he offered for the inconsistent testimony appears plausible when viewed in light of the fact that Muhanna had no culpable motivation to make up the story about the street fight. After all, the incident as described in the asylum application and in his ultimate testimony was more helpful to his cause than his intermediate statements. For him to lie on his application and then to abandon that lie for a denial that any stabbing had occurred, and then for a story less helpful to his cause, appear to make far less sense than his explanation that the story on the application was true but that he was afraid of telling the truth at the hearing. Hence the inconsistency in his testimony does not necessarily support a finding that the application was false, but rather tends only to show that Muhanna was not credible at one point during the hearing.

avoid testifying about an asylum application that he has filed, merely because there may be

other grounds on which he can avoid removal.

■ But under 8 C.F.R. § 208.20 a finding of frivolousness does not flow automatically from an adverse credibility determination in any event. Inconsistencies between testimony and an asylum application, while certainly relevant to a credibility determination that may result in the denial of an applicant's asylum claim, do not equate to a frivolousness finding under Section 1158(d)(6), which carries with it much greater consequences. It is because of those severe consequences that the regulation requires more: a finding of deliberate fabrication of a "material element" of an application, plus an opportunity for the alien to account for inconsistencies. Those requirements protect the same rights to factfinding and argument on one's own behalf that *Abdulai* teaches are protected by the Fifth Amendment.

Here, by imposing a frivolousness finding based not on a thorough examination of the application but instead on her assessment of Muhanna's credibility, and by consequently refusing to allow further testimony, the IJ violated those rights and deprived Muhanna of due process. Thus the frivolousness finding cannot stand, and Muhanna must be given "a full and fair hearing that allows [him] a reasonable opportunity to present evidence on [his] behalf" (*Abdulrahman v. Ashcroft*, 330 F.3d 587, 596 (3d Cir.2003)) with respect to both his waiver and asylum applications.

### Muhanna's Other Claims

■ After making the finding that Muhanna had filed a frivolous asylum application and was therefore ineligible under Section 1158(d)(6) for the good faith marriage waiver or asylum, the IJ also denied his applications for withholding of removal and protection under the Convention (neither is considered an "immigration benefit" barred by the frivolousness finding). To be entitled to withholding of removal under Section 1231(b)(3)(A), an alien must show a "clear probability" that his or her life or freedom could be threatened in the proposed country of removal (*Janusiak v. INS*, 947 F.2d 46, 47 (3d Cir.1991)). And for protection under the Convention an alien must show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal" (*Tarrawally v. Ashcroft*, 338 F.3d 180, 187 (3d Cir.2003)). In both cases the relevant implementing regulation directs that "the testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration" (8 C.F.R. §§ 208.16(b) and (c)(2)). Thus "[a]n alien's credibility, by itself, may satisfy his burden or doom his claim" as to both withholding of removal and protection under the Convention (*Dia*, 353 F.3d at 247). Here the IJ found that Muhanna was not credible and had therefore failed to satisfy his burden with respect to the withholding of removal and Convention claims.

■ We review the IJ's adverse credibility determination under the substantial evidence standard (*Tarrawally*, 338 F.3d at 184). Under that standard the determination will be upheld to the extent that it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole" (*Chen Yun Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002)). For the same reasons that we have concluded Muhanna was deprived of due process, we hold that the IJ's adverse credibility determination is not supported by substantial evidence: Instead her premature decision to halt the proceedings based on a flawed frivolousness finding prevented the development of a record upon which an adverse credibility determination could be made.

■ In this instance the bulk of the discussion in the IJ's opinion about Muhanna's credibility as to the withholding

and Convention claims focuses not on his assertions that his life would be threatened or that he would be tortured were he removed to Jordan, but rather on the inconsistencies in his testimony about his marriage. But one adverse credibility determination does not beget another—as we said in *Jian. Lian Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir.2004), "On the contrary, an IJ must justify each credibility finding with statements or record evidence specifically related to the issue under consideration." Only in passing does the IJ's oral decision address matters specifically related to the withholding and Convention claims:

> In addition, as far as the Court is concerned, the respondent is incredible and is fabricating information about his supposed withholding application because of his misrepresentation about what happened to him the last time he was in Israel. At first he claimed that he was arrested and then he backed off and admitted that he was really only detained at the most a few hours at a check point in Ramallah. In addition, he vaguely claims that the Jew came over to his brother's house to attack his brother at night and this took quite a few questions to even develop. The respondent, in addition, has lied about the circumstances of his own stabbing as far as the Court is concerned.

We cannot say that such a cursory discussion of the withholding and Convention claims contains "specific cogent reasons" that are "substantial and bear a legitimate nexus" (*Chen Yun Gao*, 299 F.3d at 276) to the adverse credibility determination when the flawed nature of the prematurely concluded record is taken into account. We therefore hold that the IJ's adverse credibility finding as to Muhanna's withholding and Convention claims is not supported by substantial evidence in those terms. Those claims must also be reconsidered in light of a fully developed record.

*Conclusion*

Because the IJ's finding that Muhanna had filed a frivolous asylum application was made without the findings of fact required by Section 1158(d)(6) and its implementing regulation, we conclude that her decision to halt the proceedings based on that frivolousness finding was premature and denied Muhanna his Fifth Amendment rights to obtain factfinding based on a record produced before the IJ and to make arguments on his own behalf. Accordingly Muhanna's petition for review of the IJ's order imposing the frivolousness finding is GRANTED, with the result that his good faith marriage waiver and asylum claims must be reconsidered. And because we further conclude that the IJ's adverse credibility determination is not supported by substantial evidence in light of the incompleteness of the record caused by the IJ's ruling, Muhanna's petition for review is also GRANTED as to the IJ's denial of his claims for withholding of removal and protection under the Convention. We REMAND this case to the BIA for proceedings consistent with this opinion.