

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-19-2005

# Sulimin v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2194

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Sulimin v. Atty Gen USA" (2005). *2005 Decisions.* Paper 824.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/824

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-2194

_____

LIDIANA SULIMIN,

Petitioner

v.

ALBERTO GONZALES, ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for review of an Order of the Board of Immigration Appeals
INS No. A79 318 381

_____

Submitted Under Third Circuit LAR 34.1(a) July 12, 2005

Before: SLOVITER, McKEE, and ROSENN, Circuit Judges

(Filed July 19, 2005)

_____

OPINION OF THE COURT

_____

ROSENN, Circuit Judge.

Petitioner Lidiana Sulimin appeals a final order of removal by the Board of

Immigration Appeals ("BIA").[1]  Petitioner is a forty-two-year-old native and citizen of

_____

[1]    Because we write primarily for the parties, their counsel, and the BIA, we set forth only the salient factual and procedural background of these proceedings.

Indonesia, where she claims that she was persecuted because she is of Chinese descent and Catholic. Petitioner entered the United States lawfully in October 2000, but overstayed her visa time limitations. She conceded removability and applied for asylum, restriction on removal, and protection under the Convention Against Torture. After a hearing on Petitioner's application, at which she was represented by counsel and aided by an interpreter, an immigration judge ("IJ") denied relief. The IJ found that Petitioner's testimony was incredible and determined that she failed to demonstrate past persecution or a well-founded fear of future persecution based on her ethnicity or religion. The IJ also concluded that Petitioner filed a frivolous asylum application. The BIA adopted and affirmed the IJ's decision. On appeal, Petitioner challenges the denial of asylum and the determination that her asylum application was frivolous.

We conclude that the denial of asylum is supported by substantial evidence, and therefore affirm that aspect of BIA's order. However, the IJ failed to make the important and necessary findings to support a determination that Petitioner filed a frivolous asylum application, as required by the regulations set forth in 8 C.F.R. § 208.20 (2000). We therefore grant the petition for review relating to the frivolous asylum application issue.

I.

In support of her claim that she suffered persecution in her native Indonesia on account of her ethnicity, Petitioner primarily claims that she was the victim of three robberies or attempted robberies during which her assailants assaulted her and uttered

2

ethnic slurs. The first incident occurred in May 1998, when riots erupted in Indonesia. Petitioner testified that five men stopped the bajaj (a three-wheeled taxicab) in which she was riding alone and demanded money. When she responded that she had no money, the men told her to "go back to your country you Chinese!" and threatened to kill her. Petitioner testified that the men grabbed her breasts, spit at her, and slashed her leg, which required seven stitches.

The second incident occurred sometime in 1999, but Petitioner could not recall the date or month. She alleges that ten men armed with knives and firearms hijacked the bus in which she was riding with approximately thirty other passengers. She claims that the robbers targeted the five ethnic Chinese passengers, demanding their money and that they "go back to [their] country." When she told the hijackers that she had no money, they threatened to strip away her clothing. She claims that one man slapped her.

The third incident allegedly occurred in June 2000. Petitioner testified at her hearing that, when the bajaj in which she was riding passed by a bank, two people on a motorcycle rode along side her, pulled her from the vehicle, and robbed her. In her second affidavit in support of her asylum application, Petitioner attested that one of the robbers stuck a knife into her armpit, told her, "Chinese, you have to pay to live in my country," and forced her to withdraw money from an automated teller machine.

In support of her religious persecution claim, Petitioner testified that she was often taunted by Muslims as she walked to her Roman Catholic church, which she

attended once or twice a week. Petitioner also relies on two U.S. State Department reports describing intolerance of religious minorities, including Catholics, in Indonesia.

Although Petitioner concedes that her hearing testimony was vague and inconsistent, she challenges the IJ's adverse credibility finding and determination that her asylum application is frivolous. Petitioner argues that she has demonstrated her refugee status under section 101(a)(42)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(42)(A), and thus qualifies for asylum.

## II.

An alien is eligible for asylum if she demonstrates that she is a "refugee," which requires her to demonstrate an inability or unwillingness to return to her country of nationality because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, political opinion, or membership in a particular social group. 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1). Persecution is marked by "extreme behavior, including 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) (internal quotation marks and citation omitted). To demonstrate past persecution, an asylum applicant must show that she experienced: (1) an incident rising to the level of persecution; (2) that occurred "on account of one of the statutorily-protected grounds"; and (3) was committed by the government or forces the government is unwilling or unable to control. Gao v. Ashcroft, 299 F.3d 266, 272 (3d

4

Cir. 2002) (internal quotation marks and citation omitted). A well-founded fear of future persecution is demonstrated by a "subjective fear of persecution that is supported by objective evidence that persecution is a reasonable possibility" if the asylum applicant is removed. Chang v. I.N.S., 119 F.3d 1055, 1066 (3d Cir. 1997). An applicant's testimony alone may be sufficient to support her claim, but it must be credible. Gao, 299 F.3d at 272.

Where, as here, the BIA affirms without opinion, the IJ's decision becomes the final agency determination for purposes of review. 8 C.F.R. § 1003.1(e)(4); Dia v. Ashcroft, 353 F.3d 228, 243 (3d Cir. 2003) (en banc). We review the IJ's factual findings, including adverse credibility determinations, under the substantial evidence standard. Under this standard, we must uphold the IJ's findings "unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir. 2001). However, we exercise de novo review of the conclusion that Petitioner's asylum application was frivolous under 8 U.S.C. § 1186(d)(6).

III.

A.    Denial of Asylum Application

Citing to numerous inconsistencies, inaccuracies, and holes in Petitioner's testimony, the IJ concluded that she lacked credibility. However, assuming arguendo that Petitioner's testimony were credible, the IJ also concluded that she failed to proffer any evidence of past persecution or a well-founded fear of future persecution on account of

her ethnicity or religion. These findings are supported by the record.

Petitioner's testimony is rife with inconsistencies and omissions of salient details. For just one example, she could not recall the month in which the 1999 bus hijacking and robbery occurred. She explained that she recalled the date when she was robbed and assaulted in May 1998, because that incident transpired during rioting which "was a very huge incident in Indonesia," whereas the 1999 bus hijacking "wasn't known worldwide." Attempting again to justify her memory lapse, Petitioner explained that the 1999 bus hijacking "happened so quickly." Yet, she also testified that the incident lasted for one-and-a-half hours, or for what seemed to her to be "a long time."

Even if Petitioner's testimony were credible, she would nevertheless fail to demonstrate past persecution on account of her ethnicity or religion. The incidents that she describes do not amount to persecution. Though dismaying, the robberies and assaults appear to be street crimes under a government temporarily out of control, and lack the extremeness of persecution. Ahmed, 341 F.3d at 217. As the IJ observed, they are three separate and apparently random crimes that occurred over the course of two years, not a concerted course of criminal behavior directed at Petitioner. Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005). Further, these crimes were perpetrated by unknown individuals, not government officials. Gao, 299 F.3d at 272. Furthermore, although Petitioner's assailants uttered ethnic slurs, there is insufficient evidence that the robberies and assaults were motivated in any way by Petitioner's ethnicity or religion. Lie, 396 F.3d at 535.

Likewise, the IJ properly concluded that Petitioner has failed to demonstrate a well-founded fear of future persecution based on her Chinese ethnicity or Catholic religion if she returns to Indonesia. Petitioner presented no evidence of her own persecution or a pattern or practice of persecution of ethnic Chinese or Catholics in Indonesia. Lie, 396 F.3d at 356-58.

B.     Frivolous Asylum Application

The IJ concluded that Petitioner's asylum application was frivolous based on "the contradiction in" her testimony, "the grave differences between" her testimony and her second affidavit in support of her application, and her inability to recall when certain events occurred. Although Petitioner concedes that her hearing testimony contained inconsistencies, she argues the inconsistencies are too minor to satisfy the heightened standard of a frivolous application finding. She contends that there is insufficient evidence that she deliberately fabricated testimony. The Government's brief to this Court informs us  that it "will not defend the IJ's separate finding that petitioner submitted a frivolous application."

A finding that an alien's asylum application is frivolous may render the alien "permanently ineligible for any benefits under" the immigration laws. 8 U.S.C. § 1158(d)(6). Because the consequences of a finding of frivolousness are so severe, the implementing regulation for § 1158(d)(6) requires a specific finding that the alien "deliberately fabricated" a "material element" of her asylum application. Muhanna v.

Gonzales, 399 F.3d 582, 589 (3d Cir. 2005) (quoting 8 C.F.R. § 208.20). We have held

that an adverse credibility finding alone cannot support a finding of frivolousness. Id.

("[A] finding of frivolousness does not flow automatically from an adverse credibility

determination . . . . Inconsistencies between testimony and an asylum application, while

certainly relevant to a credibility determination that may result in the denial of an

applicant's asylum claim, do not equate to a frivolousness finding under Section

1158(d)(6), which carries with it much greater consequences.").

Here, the IJ apparently based the frivolousness determination solely on the

adverse credibility finding. The IJ failed to examine Petitioner's asylum application and

make specific findings as to which material elements of her application were deliberately

falsified, as required by 8 C.F.R. § 208.20.[2]  Although the IJ noted that Petitioner's

asylum application and initial affidavit contained some false statements, this finding was

not the basis for the determination that her application was frivolous.[3]  Because an

---

[2]     The IJ, however, provided Petitioner with ample opportunity to explain the discrepancies and implausibilities in her claim.  See 8 C.F.R. § 208.20.

[3]     Petitioner's asylum application and initial affidavit falsely state that "young native Indonesians" gang-raped her and killed her mother.  Petitioner testified that she paid $1,000 to a man named "Kenny" to prepare her asylum application and affidavit, and that when she had someone translate these documents for her one day before her interview with an immigration officer, she learned that they contained false statements.  It is unclear from the record whether Petitioner knew that Kenny would include false statements in her application and initial affidavit.  Petitioner testified that Kenny told her beforehand: "the story, I make it for you," but that she "didn't understand what exactly" Kenny was "saying."
    Subsequently, Petitioner submitted a second affidavit in support of her application, which, she reiterated at her hearing, contains accurate statements.  The IJ based his

8

adverse credibility finding is not coextensive with a determination that an application is frivolous, the IJ's determination does not comply with the applicable regulations.  See Muhanna, 399 F.3d at 589; Lin v. Ashcroft, 83 Fed. Appx. 480, 486-88 (3d Cir. 2003).

IV.

For the foregoing reasons, we affirm the denial of Petitioner's asylum application, but vacate the determination that her asylum application was frivolous.  Accordingly, we grant the petition for review pertaining to the frivolous application issue.

---

frivolousness finding on the discrepancies between Petitioner's hearing testimony and the statements contained in her second affidavit.