File Name: 06a0744n.06
Filed: October 5, 2006
File Name: 06a0726n.06
Filed: October 5, 2006

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Nos. 05-3156/ 05-3906

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

GJELOSH P. VUSHAJ, FILE VUSHAJ, and
MENDRIT VUSHAJ,

      Petitioners,

v.

ALBERTO R. GONZALES, Attorney General of
the United States,

      Respondent.

ON APPEAL FROM THE BOARD OF
IMMIGRATION APPEALS

_____/

Before:     MARTIN and RYAN, Circuit Judges; and MARBLEY, District Judge.[*]

     BOYCE F. MARTIN, JR., Circuit Judge. Gjelosh Vushaj, his wife File, and son Mendrit

are all citizens and natives of Albania. They petition this Court for review of the Board of

Immigration Appeals's affirmance of the immigration court's decision denying their application for

asylum, withholding of removal, and relief pursuant to the United Nations's Convention Against

Torture. Additionally, the Vushajs appeal the Board's decision that their applications were frivolous

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District
of Ohio, sitting by designation.

and denying their motion to reopen the hearing. Based on the discussion below, we deny the petition for review as to the Vushajs' removability and their motion to reopen.

I.

Gjelosh and File Vushaj previously entered the United States on January 31, 1994, visiting relatives for one month. Mr. Vushaj returned to the United States on January 13, 1997, visiting relatives for twenty-five days. Most recently, Mr. and Mrs. Vushaj entered the United States as non-immigrant visitors for pleasure on March 10, 1997.[1] They were authorized by the Immigration and Naturalization Service ("INS") to stay in the United States until September 9, 1997. Mendrit entered the United States without inspection on March 13, 1997.

On May 27, 1997, Vushaj filed an application for asylum with the INS on behalf of himself and his family. Subsequently, the Vushajs applied for withholding of removal under the United Nations Convention Against Torture. On January 20, 1998, the INS issued a Notice to Appear, charging that Mr. and Mrs. Vushaj were subject to removal from the United States having stayed in the United States longer than permitted in violation of section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"). The INS also issued a Notice to Appear, charging that Mendrit was subject to removal as an alien present in the United States without being permitted or paroled in violation of section 212(a)(6)(A)(i) of the INA. The Vushajs have conceded that they are subject to removal.

On February 4, 2004, the immigration court conducted a merits hearing on the Vushajs' applications. Mr. Vushaj was the first and primary witness for the family's application and he

---

[1]Mr. Vushaj's passport was actually stamped March 1, 1997, however he claims that this date is incorrect and the correct date of entry was March 10, 1997. In support, Vushaj points out that his passport shows that, like his wife, he entered Bulgaria on March 9, 1997 and left on March 10, 1997.

testified to the following facts, supplemented by the statement he submitted to the immigration court with his family's application.

On February 26, 1984, Vushaj and his family were forcefully displaced from their home in Shkodra, Albania to the Bushat Camp because of their opposition to communism. During their five years in isolation, Vushaj and his family were tortured by communists. In 1990, Vushaj's two brothers, Martin and Gjeto Vushaj, escaped from internment and eventually received political asylum from the United States. After the fall of communism, Vushaj joined the emerging democratic party in hopes of establishing a democracy in Albania. In 1992, the Albanian parliament enacted laws allowing political prisoners under the communist regime to obtain positions in the police force. On November 17, 1992, Vushaj was appointed as an officer of the Shkoder Police Department. On May 5, 1994, Vushaj arrested socialist leaders, including Bilbil Mema and Fatos Nano for attempting to lead illegal demonstrations. Mema was later appointed director of the Albanian police and Nano became the prime minister of Albania.

Vushaj testified that on August 15, 1994, he was arrested by Baskim Gazidede, leader of the secret police, because he refused to place weapons in the building that was the site of a hunger strike. Vushaj claims that he was severely tortured while in prison. According to Vushaj, he remained in prison for ten days and was released after President Sali Barisha acknowledged that Vushaj's actions were legal. After his release, Vushaj claims that the secret police made it difficult for him to complete his duties as a police officer. On several occasions the secret police would release prisoners whom Vushaj arrested. After their release, the criminals sought to locate and kill Vushaj and his family.

In early 1997, the communists regained power in Albania and ordered all pro-democratic police officers killed. Many of Vushaj's friends were killed by the communists. He testified that he received a note under his door threatening him and the lives of his family. The communists burned down the police department and military division. Vushaj testified that one of the men who he had previously arrested, Tolin Kola, tried to kidnap Mendrit twice. Vushaj additionally claimed that Nano issued an order out for his arrest. However, Mema, the director of the police and who was formerly imprisoned by Vushaj as being a socialist leader, stated that the order was fake and that there was never order issued for Vushaj's arrest. Vushaj claimed that the document is authentic because it was consistent with events that occurred in Albania. Additionally, Vushaj alleged that two men were sent by Nano to the United States to kill him.

Mrs. File Vushaj testified that she sought asylum in the United States because she was afraid for her life due to her husband's position as a police officer in Albania. She confirmed that her husband had in fact been arrested for ten days in 1994. When asked to describe her husband's physical condition when released from jail, she described him as "exhausted", "upset" and "sad". She also claims to have been present during the two attempted kidnappings of Mendrit. She stated that "they tried to kidnap him at home and two weeks later they tried to kidnap him outside when they tried to put him in the car." Although she could no longer remember exactly when the alleged kidnappings took place, she said they occurred in February of 1997.

Mendrit also testified that there had been two attempts to kidnap him. The first attempt involved a man trying to kick down his door. Mendrit called the police and they apprehended the man. The second attempt occurred two to three weeks later. Mendrit claims that several men chased

him with a car until he ran into his cousin's store.  Mendrit could not explain why he thought these incidents were attempted kidnappings and not attempted robberies or something else.

Mendrit claims that his name is actually "Madrid" even though all official documents including his driver's license spell his name as "Mendrit."   He claims that his name was misunderstood when he came to the United States.   The immigration court dismissed this explanation because several documents such as the application for asylum, which were filed by Mr. Vushaj, continued to use "Mendrit."   The immigration court asked Mendrit, "[a]re you telling me that your father can't tell the truth about the most minor thing," to which Mendrit answered affirmatively.

II.

On February 18, 2004, the immigration court denied the Vushajs' applications for asylum, withholding of removal, and relief under the Convention Against Torture.  The immigration court cited several inconsistencies between testimony given, evidence submitted and the actual present situation in Albania.  First, Vushaj could not provide a reason as to why he was severely beaten during his ten-day detainment in 1994.  Further, when Mrs. Vushaj testified about the physical condition of her husband after the ten days in prison, she, despite every opportunity, failed to mention any physical injuries visible on him.  On their application for asylum, Vushaj spelled his son's name as "Mendrit", yet his son testified that his name is in fact spelled "Madrid."  Additionally, Vushaj wrote March 1, 1997 as the date of his arrival in the United States on the application for asylum, which is consistent with the stamp on his passport.  Yet, both Mr. and Mrs. Vushaj testified that date was incorrect and the actual date was March 10, 1997.

Vushaj presented an arrest order allegedly issued by Nano (the socialist leader who became the prime minister of Albania), that was later verified to be fraudulent by the Albanian government. The immigration court thought it suspicious that Vushaj's father is who alerted Vushaj as to the presence of the order, yet when the father testified he never was asked one question pertaining to the order. Vushaj knew that the order was verified false as early as April of 2000 and failed to obtain further evidence supporting the accuracy of the order by the time testimony was taken in February of 2004. Additionally, Vushaj was asked if he had been convicted of a crime since his stay in the United States to which he said that he had not. Yet, the government produced evidence demonstrating that Vushaj pled guilty to "resisting and obstructing a police officer and domestic violence and battery on his wife." The immigration court found that the testimony given regarding the alleged kidnapping attempts was speculative even if all testimony is believed.

Finally, the immigration court found the Vushajs' description of Albania to be inconsistent with the evidence submitted by the government. The immigration court acknowledged that while there had been an "implosion of anarchy" in 1997, present day Albania is much more balanced; that major shifts in the political structure of the Albanian government has made the country stable. Further, Vushaj did not present enough evidence demonstrating that what he feared was in fact political persecution rather than "part of the vicissitudes of being a police officer."

The immigration court felt that because of all of the "red flags" in Vushaj's story and apparent ease to which he would change his story, Vushaj was not credible and therefore the immigration court denied the applications for asylum and withholding of removal. Further, the immigration court found the application for asylum to be frivolous pursuant to 8 C.F.R. § 1208.20 because of two

fraudulent documents presented by Vushaj. The first was the alleged arrest order. The other was Mendrit's birth certificate, which had the name as "Mendrit." Because Mendrit testified that his name was actually spelled "Madrid," the immigration court found the birth certificate to be fraudulent. Indeed, Mendrit testified that his father was not always truthful. In conclusion, the immigration court ordered the Vushajs' removal from the United States to Albania.

The Vushajs filed a timely appeal with the Board of Immigration Appeals ("Board"). On January 14, 2005, the Board adopted and affirmed the immigration court's decision, including the determination that Vushaj was not credible and that the application for asylum was frivolous. On February 8, the Vushajs petitioned this Court to review the Board decision (No. 05-3156). On April 7, the Vushajs filed a motion to reopen their case with the Board because of "newly discovered and previously unavailable evidence material to the Immigration Court's adverse credibility and frivolous findings." The new evidence consisted primarily of statements from Mark Luke Majal and Agostin Sterkaj, both Albanian police inspectors in 1997, confirming that there was an arrest order for Vushaj issued on August 15, 1997. On June 21, 2005, the Board denied the motion to reopen because the newly offered evidence could have been offered earlier. Further, according to the Board, the new evidence did not rebut the other discrepancies in the Vushajs' claims. On July 14, 2005, the Vushajs petitioned this Court to review the Board's decision denying the motion to reopen (No. 05-3906). This Court consolidated both petitions for review.

III.

A. The Vushajs' Applications for Asylum and Related Relief

This Court's review of administrative asylum and withholding of removal eligibility determinations is limited to a deferential standard. In reviewing decisions of the Board denying an application for asylum, the determination is upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole. *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998 ) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). We will reverse only if the evidence presented by the Vushajs was such that a reasonable factfinder would not fail in concluding that the requisite fear of persecution existed. *Elias-Zacarias,* 502 U.S. at 483-84 (citing *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939)).

The Attorney General may grant asylum to any person who qualifies as a "refugee." 8 U.S.C. § 1158(b). A refugee is a person unable or unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To prove one's refugee status, one must present specific facts demonstrating suffering of past persecution or a well-founded fear of future persecution motivated by one of these five statutorily protected grounds. *See Elias-Zacarias*, 502 U.S. at 481. The applicant's testimony, if credible, "may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.13(a). To prove a well-founded fear of future persecution, an applicant must actually fear that they will be persecuted upon return to their country, and they must present evidence establishing an "objective situation" under which his fear can be deemed reasonable. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440-41 (1987).

In this case, the Board and the immigration court were in agreement that the fatal flaw in the Vushajs' applications was the credibility of Mr. Vushaj's testimony. Therefore, it is that adverse

credibility determination we review. "[C]redibility determinations are considered findings of fact, and are reviewed under the substantial evidence standard." *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). Based on that standard, this Court must treat findings of fact as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (quoting 8 U.S.C. § 1252 (b)(4)(B)).

In coming to this adverse credibility determination, the immigration court provides, in its twenty-six page oral decision, a laundry list of reasons why the court did not believe Mr. Vushaj to be credible. Vushaj failed to mention the beating and torture during his imprisonment in 1994 in his written applications. Despite allegedly being beaten to a pulp and almost dead, Vushaj's wife failed to recall any physical injuries to Mr. Vushaj after his imprisonment. Vushaj also failed to include the two alleged attempted kidnappings of his son on any of his written applications. Additionally, Vushaj lied during his testimony when he said that he had never been convicted of a crime in the United States. In fact, Vushaj had pled guilty to obstructing a police officer and domestic violence and battery to his wife. This guilty plea was also not included on any of Vushaj's written applications. In sum, the immigration court found Vushaj's testimony to be "vague," "ambiguous," "nonsensical," and most importantly not credible.

The immigration court also found the Vushajs' applications suspect because of two documents which the court found to be forgeries. One was the birth certificate of Mendrit, which is spelled Mendrit on the birth certificate while the young man testified to being named Madrid. Although the immigration court feels this document is of great import to the credibility of the

Vushajs, it seems to this Court to be a highly irrelevant inconsistency.  *See Sylla*, 388 F.3d at 926

(holding that adverse credibility findings cannot be based on "an irrelevant inconsistency").

The second document that the immigration court found to be fraudulent was the order for

Vushaj's detention and murder issued on August 15, 1997.  The State Department found this

document to be a forgery upon contacting the Director of the Police for Shkodra, Bilbil Mema.

Vushaj argues that Mema has suspect credibility in refuting the document because Mema has been

accused of collaborating with human and drug traffickers and because Mema was the one who issued

the order against Vushaj.  Neither of these accusations were credible to the immigration court and

we have no basis to question this determination.  The accusations against Mema sound more like

rumor, coming from two internet news agencies.  Additionally, Mema's name and signature appear

nowhere on the order despite the fact that his title as Director of Police appears on the document as

the person authoring the order.

Considering these inconsistencies from Vushaj's testimony, his applications, and other

documents presented to the immigration court, there was substantial evidence to support the

immigration court's adverse credibility determination.  This evidence certainly does not rise to the

standard that "any reasonable adjudicator would be compelled to conclude to the contrary" of this

adverse credibility finding.  *Yu*, 364 F.3d at 702.

 B.  The Frivolousness of the Vushajs' Applications

The immigration court decided that the Vushajs' applications were frivolous based on their

submission of two documents which they knew to be fraudulent: the birth certificate and the order

for detention.  This finding was affirmed by the Board.  Under 8 C.F.R. § 1208.20, "a finding of

frivolousness does not automatically flow from an adverse credibility determination." *Muhanna v.*

*Gonzales*, 399 F.3d 582, 589 (3rd Cir. 2005). Rather, the immigration court must

> specifically find [] that the alien knowingly filed a frivolous asylum application. For purposes of this section, an asylum application is frivolous if any of its *material elements is deliberately fabricated*. Such a finding shall only be made if the immigration judge or the Board is satisfied that the applicant, during the course of the proceedings, has had sufficient opportunity to account for any discrepancies or implausible aspects of the claim.

8 C.F.R. § 1208.20 (emphasis added). In this case, the birth certificate discrepancy is not a "material

element" and, therefore, should not have been considered as a reason for the applications to be

determined to be frivolous. Additionally, the discussion from the immigration court never

adequately explains how the submission of the detention order was a deliberate act by Vushaj to

mislead the immigration court. By Vushaj's own admission, he received the document via his father,

who had received it from a family friend in Albania. Considering this chain of possession that the

document took, along with its look of veracity, the immigration court appears to have erred to

assume that Vushaj presented this document to intentionally defraud the immigration court.

Therefore, we reverse the immigration court's determination that the Vushajs' applications

were frivolous.[2]

C. The Vushajs' Motion to Reopen their Case

---

[2]Despite this favorable ruling on Vushaj's frivolousness appeal, it has no bearing on this Court's final result. If an alien is determined to have submitted a frivolous application, then they are no longer eligible for any benefits of asylum. 8 U.S.C. § 1158(d)(6). Because of the immigration court's adverse credibility determination (and our affirmance of that decision), the Vushajs are not eligible for asylum even with their application being held to be not frivolous.

Finally, the Vushajs appeal the Board's decision denying their motion to reopen the proceedings. "The decision to grant or deny a motion to reopen . . . is within the discretion of the Board." 8 C.F.R. § 1003.2(a). We review the Board's denial of a motion to reopen for an abuse of discretion. *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006). In order for a Board to consider a motion to reopen the proceedings, it must be accompanied by evidence which is "material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1).

In their motion to reopen the case, the Vushajs presented the Board with two handwritten letters from two former Albanian police officers who wrote to confirm that the contents of the detention order were true. While these documents are clearly material to the previous holdings of the immigration court and the Board, Mr. Vushaj never explained to the Board why these statements were previously unavailable, especially in light of the four-year delay between Vushaj's initial merits hearing in 2000 and the final one conducted in 2004. Vushaj's brief provides no guidance, only to say the evidence was "previously unavailable." This is insufficient to demonstrate an abuse of discretion by the Board.

Therefore, we affirm the decision of the Board denying Vushaj's motion to reopen his case.

IV.

Based on the above discussion, we DENY the Vushajs' petition for review as to their removability and their motion to reopen, but REVERSE the Board's decision that their application was frivolous.

RYAN, Circuit Judge, concurring in part and dissenting in part. Our "substantial evidence" standard of review does not permit us to disturb the IJ's finding that the petitioners' lack of credibility precludes their request for asylum and related relief. But, in my view, neither does it permit us to disturb the IJ's conclusion that Gjelosh Vushaj's application was frivolous. I would not have made that finding had I been the authorized fact finder, but I was not, and I cannot say, given the record before us, that the IJ's finding was not supported by substantial evidence.

That said, I concur in the court's judgment denying the petition for review.