

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-20-2008

# Tang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3581

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Tang v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1187.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1187

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 07-3581

———————

YI DI TANG,

                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

                              Respondent

———————

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A98 113 629)
Immigration Judge:  Honorable Henry S. Dogin

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 14, 2008

Before: AMBRO, FISHER and JORDAN, <u>Circuit Judges</u>

Opinion filed: May 20, 2008

———————

OPINION

———————

PER CURIAM

        Yi Di Tang has filed a petition for review of the final order by the Board of

Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ"'s) denial of

Tang's requests for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review.

The parties are familiar with the background of this case, and so we provide only a summary of the proceedings. Tang is a native and citizen of the People's Republic of China. In June 2004, he arrived in the United States without legal documents and without inspection by an immigration officer. He was charged with removability under Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). He conceded removability. On January 14, 2005, on the basis of being a Falun Gong practitioner, Tang applied for asylum, withholding of removal, and CAT relief. The IJ held an evidentiary hearing on Tang's claims on March 29, 2006.

Tang testified about his involvement with Falun Gong. He stated that he had been working as a cashier in an internet café since March 2000. He did not know the name of his boss at the café, but he thought his name was "Chen." When business was slow, Tang would log onto the computer and play games or visit websites, including Falun Gong websites. He stated that his boss was aware that the computers allowed access to Falun Gong websites. He was the only employee of the café until his friend, Ar Guang, was hired. Tang stated that he began practicing Falun Gong in January 2004. He testified that he was introduced to Falun Gong when he was at Guang's home and witnessed Guang's parents "practicing some kind of movement," which Guang explained was Falun Gong.

2

(A.R. 149.)  He knew that the practice was banned by the Chinese government, but he did not feel that it was a cult.  Thereafter, he practiced Falun Gong after work two to three times per week, either by himself or with Guang, at Guang's home or secretly at a nearby park, until June 2004.

On June 8, 2004, Tang learned that Guang and his parents had been arrested for their Falun Gong activities, and he became afraid.  After he told his mother about the arrest and his participation in Falun Gong, she arranged for Tang to hide at her friend's house, afraid that Guang would reveal to the police Tang's involvement in Falun Gong.  Tang learned from his mother that the next day, June 9, 2004, the police came to his house, searched the place, took his address book, and threatened his mother.  The following day, Tang left China for the United States.  He later heard that Guang and his family were sent to a labor camp, and that the police returned to Tang's house several times; his mother informed him that he is under warrant of arrest.  Meanwhile, Tang also received an unsigned but seal-stamped letter from the internet café, stating that he was being dismissed for participating in Falun Gong activities.  Tang stated that he continued to practice Falun Gong in the United States once or twice a week.

Tang was asked to clarify his testimony on cross-examination.  For example, when asked to explain why his written statement in support of his asylum application contained no reference to his continuing Falun Gong practice in the United States, even though it was dated and signed months after his arrival in the United States, he stated only that he

3

"handed over to lawyer already." (A.R. 173.) He also could not provide the name or the location of the park near his current home where he practiced Falun Gong. When questioned about the Chinese authorities' search of his home, he stated that the police did not confiscate his computer, contrary to the account contained in his mother's letter submitted in support of his asylum application, and he could not explain the discrepancy. Tang was also asked during re-direct examination to clarify the origin of his Falun Gong involvement and the length of his practice while in China. This time, in contrast to his prior testimony and to his written statement, he testified that he initially learned about Falun Gong from websites and practiced it by himself starting in January 2004, then he later practiced with his friend Guang in March, for a period of three months. Tang clarified that although his café boss was aware that the employees and patrons had access to all types of websites, the boss did not know that Tang in particular had viewed Falun Gong material while at work.

The IJ denied relief and ordered Tang's removal from the United States. The IJ found that Tang lacked credibility in his testimony and failed to meet his burden of showing that he is a true practitioner of Falun Gong. The IJ relied on a number of inconsistencies within Tang's testimony and also between the testimony and his asylum application materials. For example, the IJ noted the inconsistency in dates and circumstances of when he first learned about Falun Gong, as well as the discrepancy regarding whether the police had seized Tang's home computer. The IJ also noted an

4

apparent inconsistency in testimony regarding Tang's boss's knowledge of Tang's reading Falun Gong materials at the internet café. Further, the IJ determined that the corroborative evidence was not due much weight and did not rehabilitate Tang's testimony, as Tang's mother's letter contradicted Tang's testimony regarding the computer seizure, and the letter of dismissal from the internet café was unsigned. Moreover, the IJ noted the lack of any reference to Tang's Falun Gong practice in the United States in the asylum application, as compared with his testimony that he regularly practiced while in the United States. Thus, the IJ determined that Tang was not credible in his persecution or torture claims and did not meet the standard for obtaining asylum relief, withholding of removal relief, or relief under the CAT.

On August 9, 2007, the BIA affirmed and adopted the IJ's decision, finding that the IJ's adverse credibility determination was not clearly erroneous. In particular, the BIA noted the inconsistencies concerning whether the police seized Tang's computer and when and how Tang first began learning about Falun Gong. The BIA also noted its agreement that there was insufficient evidence to support a CAT claim. This petition for review followed.

We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a). Because the BIA appears to have relied substantially on the findings of the IJ, we have jurisdiction to review the decisions of both the BIA and the IJ. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). Our review is for substantial evidence, that

is, "[w]e will defer to and uphold the IJ's adverse credibility determinations if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole,' but such findings must be based on inconsistencies and improbabilities that 'go to the heart of the asylum claim.'" Chen v. Gonzales, 434 F.3d 212, 216 (3d Cir. 2005) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)) (internal citation omitted). We must affirm "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003) (citations omitted).[1]

Tang challenges the agency's determination that he was not credible. Concerning the discrepancies about how and when he began to learn Falun Gong and about whether his computer was seized during the police search of his home, Tang argues that "a reasonable explanation may exist," Pet. Br. at 11, and he proceeds to offer possible explanations, such as a "bad memory" on the part of his mother or himself. We are not persuaded by Tang's arguments. Tang provided varying accounts of the genesis of his involvement with Falun Gong and of his friend Guang's role in his practice. These facts directly impact his persecution claim in that he is claiming to be a true follower of Falun Gong and is seeking relief on that basis. Tang offered his mother's letter as corroborating evidence, but the letter does not bolster his credibility in that it contains a discrepancy regarding the Chinese authorities' search of his home, which Tang testified was

---

[1] Tang applied for asylum before May 11, 2005, and therefore the REAL ID Act's new standard for credibility determinations does not apply to him. Chukwu v. Attorney Gen., 484 F.3d 185, 189 (3d Cir. 2007).

6

motivated by his Falun Gong activities with Guang and therefore goes to the heart of his claim.

We conclude that the adverse credibility finding was based on specific, reasonable and substantial evidence supported by the record, based on the two examples of inconsistencies in Tang's story as relied upon by the BIA. Because Tang offers arguments regarding additional inconsistencies cited by the IJ, we will address them as well. The IJ noted discrepancies in Tang's testimony concerning whether his boss knew that Tang accessed Falun Gong websites on the internet café computers. Indeed, the hearing transcript does not reveal an inconsistency on this point. Tang testified that his boss knew that "there was access to Falun Gong material" on the café computers. (A.R. 159.) Although Tang stated that he did access those websites while at the café, he did not testify on direct examination that the boss knew that fact. Thus, his cross-examination testimony reinforcing that point does not manifest any inconsistency. (See A.R. 180-81.) However, this point does not nullify the other substantial evidence supporting the adverse credibility finding.

Tang also argues that the IJ improperly based its adverse credibility finding on his asylum application's silence regarding Tang's practice of Falun Gong while in the United States. In support, Tang cites Aguilera-Cota v. INS, 914 F.2d 1375, 1382-83 (9th Cir. 1990), which concerned the testimony describing collateral incidents involving the petitioner's relatives and the omission of those details in the asylum application. In

7

contrast, the omission from the asylum application regarding Tang's continued Falun Gong practice in the United States is not a minor one, given that Tang's continuing involvement with Falun Gong is the basis for his claimed fear of persecution if he were returned to China.

Lastly, Tang contends that the IJ failed to make an independent determination of his CAT claim when the IJ denied relief for the same reasons given for the denial of asylum and withholding relief. We agree with Tang's assertion that claims for relief under the INA are to be analyzed separately from CAT claims. See Toussaint v. Attorney Gen., 455 F.3d 409, 417 (3d Cir. 2006). The IJ determined that Tang was not believable in his claim that he is a true Falun Gong practitioner, and as such, he determined that Tang was not believable in his claim that he faced torture as a Falun Gong practitioner. A petitioner's credibility, by itself, may also doom his or her claim under the CAT. See Muhanna v. Gonzales, 399 F.3d 582, 589 (3d Cir. 2005). Tang argues that the IJ should have separately considered his claim that if he were to return to China, he would be sent to a labor camp, like Guang's family, as punishment for his Falun Gong practice. However, in making the adverse credibility determination, the IJ noted that Tang did not present any documentation that Guang even exists. In affirming the IJ's decision, the BIA both upheld the adverse credibility determination and agreed that there is insufficient evidence to support Tang's claim. Given that Tang's CAT claim hinges on his credibility regarding his own Falun Gong practice and Guang's family's case, we are unpersuaded

8

by Tang's claim of error.

We will deny the petition for review.