Simon Jean Paul YOMBA, Petitioner

v.

ATTORNEY GENERAL OF
the UNITED STATES.

No. 05-5496.

United States Court of Appeals,
Third Circuit.

Submitted pursuant to Third Circuit
LAR 34.1(a) April 24, 2007.

Filed: Oct. 23, 2007.

Nationalities Service Center, Philadelphia, PA, for Petitioner.

Emily McKillip, Office of United States Attorney, Philadelphia, PA, Allen W. Hausman, Susan K. Houser, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: McKEE, AMBRO, Circuit Judges and ACKERMAN,* District

---

* The Honorable Harold A. Ackerman, Senior      United States District Judge for the District of

Judge.

## OPINION

McKEE, Circuit Judge.

Simon John Paul Yomba petitions for review of a final order of removal of the Board of Immigration Appeals that adopted and affirmed the Immigration Judge's decision denying Yomba's claims for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"), as well as the IJ's determination that Yomba filed a frivolous asylum application. For the reasons that follow, we will deny the petition for review as to the claims for asylum and withholding of removal.[1] We will grant the petition for review as to the frivolous asylum application.

## I.

Inasmuch as we write primarily for the parties who are familiar with this case, we need not set forth the historical or procedural background except insofar as may be helpful to our discussion. The BIA adopted the decision of the IJ with two modifications. The BIA did not agree with the IJ's finding that Yomba was inconsistent about whether he had been summoned to appear before the prefect instead of the governor. The BIA also concluded that the IJ erred in finding that Yomba had testified inconsistently about whether gangsters first warned him to leave Cameroon or whether he first received a phone call advising him to do so. However, the BIA found that Yomba did not show that the remainder of the IJ's finding that he was not credible was clearly erroneous. The BIA also found that Yomba did not establish that the IJ erred in concluding that Yomba's asylum application was frivolous.

New Jersey, sitting by designation.

## II.

Where the BIA invokes specific aspects of the IJ's analysis and fact finding in support of its conclusions, we review both the IJ's and the BIA's decisions. *Voci v. Gonzales,* 409 F.3d 607, 613 (3d Cir.2005). We review the determination that Yomba failed to establish eligibility for asylum or withholding of removal for substantial evidence. *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). *See* INA § 242(b)(4)(B). "Under this standard, a finding will stand if it is supported by reasonable, substantial, and probative evidence in the record when considered as a whole." *Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003) (citation and internal quotations omitted). The same standard applies to the BIA's denial of the claim for withholding of removal. We may not reverse absent a finding that the record "not only supports [a contrary] conclusion, but compels it." *Elias–Zacarias,* 502 U.S. at 480 n. 1, 112 S.Ct. 812.

When the IJ's holding is based on adverse credibility determinations, we affirm "if there is substantial evidence in the record to support it." *Senathirajah v. INS,* 157 F.3d 210, 216 (3d Cir.1998). We ask whether the credibility determination "is supported by evidence that a reasonable mind would find adequate" and whether it is appropriately grounded in the record. *Dia v. Ashcroft,* 353 F.3d 228, 249–50 (3d Cir.2003)(en banc). However, "an immigration judge who rejects a witness's positive testimony because in his or her judgment it lacks credibility should offer a specific, cogent reason for his or her disbelief." *Senathirajah,* 157 F.3d at 216 (citation, internal quotations and bracket omitted). "Adverse credibility determinations based on speculation or conjecture, rather than on evidence in the

---

1. Yomba does not challenge the denial of his claim for relief under the CAT.

record, are reversible." *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir.2002) (citation omitted). "Generally, minor inconsistencies and minor omissions that reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding." *Id.* (citation and internal quotations omitted). "The discrepancies must involve the heart of the asylum claim." [2] *Id.* (citation and internal quotations).

### III.

Yomba contends that the adverse credibility findings of the IJ and BIA are not supported by substantial evidence because they are based on purported discrepancies that do not actually exist, or that they are minor and irrelevant. With one exception, we disagree. The exception concerns the conclusions the IJ drew from the absence of scars on Yomba's feet. In explaining his decision, the IJ said:

> It is impossible for this Court to believe that after being beaten on the soles of his feet for 150 times and to have his feet being cut and bleeding and subsequently being treated for 45 days in a hospital for his wounds, that there would not be any scars on his feet as an indicia that his testimony is indeed true.

In affirming the IJ's decision, the BIA held that "[i]t has not been shown that the [IJ] clearly erred by holding that it was implausible that [Yomba], who was supposedly bloody and unable to walk after this treatment, nonetheless recovered without even one scar." The IJ and BIA reached this conclusion without considering one

shred of medical or scientific evidence about the likelihood that blunt trauma could be administered to the souls of one's foot in such a way that scars would not result. Yet, that is a medical question totally outside the competence of the IJ and the BIA. *See Abdulrahman v. Ashcroft*, 330 F.3d 587, 598 (3d Cir.2003). Therefore, the conclusion that Yomba did not testify truthfully about receiving a beating on the souls of his feet is not supported by substantial evidence.

■ However, that does not alter the result because the remaining adverse credibility determinations are supported by substantial evidence. Yomba's testimony was rife with inconsistencies. Moreover, he produced no credible evidence that the organization he claimed to have founded, the Pan–African Committee on Human Rights, even existed. Aside from his testimony, the only evidence of the organization's existence is three letters addressed to the president of that organization, one dated August 23, 1999, one dated October 8, 1999, and one dated January 10, 2000. However, those letters undermine Yomba's credibility rather than corroborate it.

Yomba testified that he was the president of the organization, but the letters are neither addressed to him, nor do they even mention his name. In addition, although the letters express sorrow about the arrest of "Monsieur le President," the dates of the letters do not correspond with the period during which Yomba testified he was under arrest. He did not testify that he was in custody in August of 1999

---

**2.** As we noted in *Zheng v. Gonzales*, 417 F.3d 379, 381 n. 1 (3d Cir.2005):

Congress has ... revised this judicially created standard to allow a trier of fact to find a lack of credibility based on any inconsistency or falsehood, "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." Real ID ACT of 2005,

§ 101(a)(3), Pub.L. No. 109–13, 119 Stat. 231, 303, *to be codified at* 8 U.S.C. § 1158(b)(1)(B)(iii). This provision, however, applies only to applications for asylum made after the effective date of the Real ID Act [May 11, 2005].

Yomba's application for asylum was filed on June 25, 2003. Accordingly, the new standard does not apply to his case.

or October of 1999. Rather, he testified that he was arrested in mid-January 2000 for writing a letter demanding that the director of Le Messager be released from custody. However, the letter dated January 10, 2000, refers to the arrest of "Monsieur le President" for providing information to the newspaper L'Effort. Thus, even if the January 10, 2000 letter was intended to relate to Yomba's mid-January 2000 arrest, the reason for the arrest as stated in the letter differs from the reason Yomba offered in his testimony.

The February 18, 1999 letter, purportedly written by Yomba's wife, is yet another inconsistency. It is addressed to the President of the National Committee of Human Rights of Cameroon, asserts that Yomba is the victim of torture and solicits aid in securing his release from custody. However, the date of the letter does not correspond to Yomba's purported custody.

Moreover, the letter states that Yomba was arrested after publishing an expose of the living conditions of the people of Cameroon in the October 20, 1998 issue of L'Effort Camerounais. However, Yomba did not testify that he published anything in October 1998 and he did not testify that he ever published anything concerning economic conditions in Cameroon. Although this could simply be viewed as an omission if it was the only inconsistency, we can not fault the IJ or BIA for concluding that the omission was probative of Yomba's candor given this record.

Yomba claims that the government of Cameroon was interested in him because he was publishing articles detailing its abuses. However, he did not produce any such articles and he offered no explanation for his failure to produce them.

Yomba's testimony about the activities in June 1998 was inconsistent. His affidavit states that he published one article in L'Effort in June 1998, and that is what he told the asylum officer. At the hearing, he testified that in June 1998, he published one article in L'Effort and also submitted a different article to the government. However, he did not mention submitting anything to the government in his affidavit or his conversation with the asylum officer. Again, given the entire record, we can not fault the IJ or BIA for concluding that this was more than an inadvertent omission or that it is simply the result of the conditions of his asylum interview. His actions in June 1998 purportedly resulted in his month and one-half confinement and physical torment. Accordingly, his inability to recount the events of June 1998 consistently further undermined his credibility.

Yomba's testimony about his confinement was also inconsistent. In his affidavit, he stated that he was taken from his jail cell and driven to the "hall of death," where he was beaten on the feet with a machete. Before the IJ, he testified that the "hall of death" was in the same building as his jail cell. Accordingly, he could not have driven there. The IJ certainly did not have to ignore that inconsistency in assessing Yomba's credibility.

Given the nature of these inconsistencies, there is clearly substantial evidence in the record to support the adverse credibility rulings of the IJ and BIA, and, therefore, we need not discuss the numerous other inconsistencies that also support those rulings.[3]

Yomba addresses these inconsistencies by arguing that the IJ improperly relied

---

**3.** For example, Yomba's testimony about the circumstances of his first release and the stranger who found him conflicts with his affidavit. His statement to the asylum officer about events after his March 2002 arrest differ from his affidavit and his testimony regarding that arrest and being taken to the morgue. There are also inconsistencies in his account of how he obtained his visa to travel to the United States.

on the asylum officer's notes and summary of his asylum office statements in making his adverse credibility determinations. Again, we disagree. The record before the IJ contained both the formal Assessment to Refer and extensive typewritten notes of the asylum officer's interview with Yomba. We realize that those notes are not a verbatim transcript. Nevertheless, they are quite detailed and are four single-spaced pages in length. They contain the questions the asylum officer asked and the answers that Yomba gave. These documents constitute a "meaningful, clear, and reliable summary of the statements made by the applicant at the interview." *In re Matter of S–S–*, 21 I & N Dec. 121, 124 (BIA 1995). The IJ was clearly entitled to consider statements reported in that interview summary in assessing Yomba's credibility. *Diallo v. Gonzales*, 445 F.3d 624, 633 (2d Cir.2006).

Finally, Yomba contends that the IJ failed to consider all of the evidence in the record. Specifically, Yomba claims that the IJ failed to give proper weight to Department of State Human Rights Report, Amnesty International Reports, and a number of press reports about human rights abuses in Cameroon. Those documents do establish that the government of Cameroon has a poor human rights record and that security forces have been responsible for beating and torturing detainees and prisoners. However, given the problematic nature of Yomba's testimony, there is insufficient evidence to support his claim that he was the victim of the human rights abuses that exist in Cameroon.

In sum, based on the numerous inconsistencies in the record, there was substantial evidence to support the finding that Yomba failed to meet his burden of producing credible evidence of a well-founded fear of persecution.

## IV.

▮ Yomba also contends that the IJ and the BIA erred in finding that he filed a frivolous asylum application. There are severe consequences for filing a frivolous asylum application. INA § 208(d), 8 U.S.C. § 1158(d), provides, in relevant part:

(6) Frivolous applications

If the Attorney General determines that an alien has knowingly made a frivolous application for asylum and the alien has received the notice under paragraph (A)(4), *the alien shall be permanently ineligible for any benefits under this chapter*, effective as of the date of a final determination on such application.

8 U.S.C. § 1158(d)(4)–(6) (emphasis added). The implementing regulation for INA § 208(d)(6), 8 U.S.C. § 1158(d)(6), provides:

For applications filed on or after April 1, 1997, an applicant is subject to the provisions of section 208(d)(6) of the Act only if a final order by an immigration judge or the Board of Immigration Appeals specifically finds that the alien knowingly filed a frivolous asylum application. For purposes of this section, an asylum application is frivolous if any of its material elements is deliberately fabricated. Such finding shall only be made if the immigration judge or the Board is satisfied that the applicant, during the course of the proceedings, has had sufficient opportunity to account for any discrepancies or implausible aspects of the claim. For purposes of this section, a finding that an alien filed a frivolous asylum application shall not preclude the alien from seeking withholding of removal.

8 C.F.R. § 208.20.

In *Muhanna v. Gonzales*, 399 F.3d 582 (3d Cir.2005), we interpreted this regulation as follows:

[U]nder 8 C.F.R. § 208.20, a finding of frivolousness does not flow automatically from an adverse credibility determination in any event. Inconsistencies between testimony and an asylum application, while certainly relevant to a credibility determination that may result in a denial of an applicant's asylum claim, do not equate to a frivolousness finding under Section 1158(d)(6), which carries with it much greater consequences.[4] *It is because of those severe consequences that the regulation requires more: a finding of a deliberate fabrication of a "material element" of an application, plus an opportunity for the alien to account for inconsistencies.*

*Id.* at 589 (emphasis added). Recently, in *Luciana v. Attorney General,* 502 F.3d 273, 280–81 (3d Cir.2007) we commented on the decision in *In re Y–L–,* 24 I & N Dec. 151 (BIA 2007), where the BIA stated the requirements for a finding of frivolousness as follows:

> (1) notice to the alien of the consequences of filing a frivolous asylum application; (2) a specific finding by the Immigration Judge or Board that the alien knowingly filed a frivolous asylum application; (3) sufficient evidence in the record to support the finding that a material element of the asylum application was deliberately fabricated; and (4) an indication that the alien had been afforded sufficient opportunity to account for any discrepancies or implausible aspects of the claim.

502 F.3d at 280(citing 24 I & N Dec. at 155).

Here, the IJ did not find that Yomba filed a frivolous asylum application based on his adverse credibility determinations. Rather, the IJ's determination of a frivolous filing, and the BIA's affirmance of it, rested solely on the IJ's belief that the four letters Yomba submitted in support of his claims were fabricated, presumably by Yomba or at his direction. The IJ reached that conclusion only because all four letters were identical in font and format. There was no other record evidence to support a finding of fabrication. However, the similarity of the letters may indicate nothing more than a standardized style and/or the fact that the authors used similar software, similar word processors/typewriters, or simply relied on a format and style that is customary for official correspondence. The mere fact that four letters use the same font and format can not support the conclusion that the letters were fabricated.[5] Accordingly, the finding that Yomba filed a frivolous application cannot stand.

### V.

For the foregoing reasons, we will deny the petition for review as to Yomba's claims for asylum, and withholding of removal, but vacate the determination that the asylum application was frivolous and grant the petition for review pertaining to the frivolous application issue.

---

4. In *Muhanna,* we noted that INA § 208(d)(6)'s bar to any benefits is "one of the most extreme provisions" in immigration law and "once it is imposed may not be waived under any circumstances." 399 F.3d at 588 (citation and internal quotations omitted).

5. We can not help but note that all of the draft opinions of the judges of this court are written using the same font and format.