NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0252n.06

No. 09-4176

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **LORETA SINANI**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| v. | ) | |
| | ) | **O P I N I O N** |
| **ERIC HOLDER, JR.**, | ) | |
| | ) | |
| *Defendant-Appellee*. | ) | |
| | ) | |

FILED
Apr 20, 2011
LEONARD GREEN, Clerk

BEFORE:     NORRIS, COLE and KETHLEDGE, Circuit Judges.

**COLE, Circuit Judge**.  Loreta Sinani petitions us for review of the decision of the Board of Immigration Appeals.  That decision affirmed the Immigration Judge's determination that Sinani's application did not qualify for asylum, withholding of removal, or relief under the Convention Against Torture.  For the following reasons, we **DISMISS** Sinani's conventional and humanitarian asylum claims for lack of jurisdiction, **AFFIRM** the Board of Immigration Appeals's decision as to her withholding and Convention Against Torture claims, and **DENY** her petition for review.

I.

Sinani is a native and citizen of Albania.  She comes from a family that had close ties to the Democratic Party and opposed the Communists and the Socialist Party.  Her uncle was the Interior Minister of Albania from 1992 to 1996, under the Democratic Party, and her cousin was the General Prosecutor of Albania under the same party.  She has been a supporter and member of the

Democratic Party since 1993. Sinani considers herself a journalist and has written articles for the Democratic Party newspaper, including one on April 4, 2003 criticizing the Socialist Party mayor of Tirana, Edi Rama, and accusing him of fraud.

Though the Immigration Judge ("IJ") did not credit her statements, Sinani testified that on April 7, 2003, she was in Tirana walking with two friends when two policemen arrested her, then took her to a park, and beat and raped her. Sinani claims that afterwards the policemen called someone, and she overheard them call the person "mayor" and tell him that they "finished the job" and that she would not write about him any further. They allegedly told her that she would be killed if she wrote any more articles about the mayor. Sinani then walked to her aunt's house, from which her parents picked her up. She visited the hospital the next day and received treatment for bruises, acute bleeding from the nose, and vomiting. Thereafter, she went into hiding and then fled the country to come to the United States.

Sinani claims she arrived in the United States on October 4, 2003, but the IJ did not credit this assertion either. Sinani applied for asylum on October 1, 2004, but filed several updated applications. The asylum officer denied her application for lack of a nexus between the rape and the available bases for asylum (such as political opinion). Sinani appealed, and the IJ found her asylum application untimely and denied her withholding and Convention Against Torture ("CAT") claims because he did not find her credible. Sinani again appealed, and the Board of Immigration Appeals ("Board" or "BIA") affirmed the IJ's decision. She timely appealed to this Court.

**II.**

**A. Standard of Review**

Where, as here, the Board issues a decision, we review the Board's decision and the portions of the IJ's determination incorporated therein as the final agency order regarding Sinani's removal. *See Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). We review legal determinations de novo, though we "must defer to the BIA's reasonable interpretations of the [Immigration and Naturalization Act]." *Id.* at 247 (internal quotation marks and citation omitted). Meanwhile, "[f]actual findings are reviewed under a substantial evidence standard in which we uphold a BIA determination as long as it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (internal quotation marks and citations omitted). The "substantial evidence" standard requires us to adopt the Board's findings of fact "[u]nless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (internal quotation marks and citation omitted). In reviewing the Board's opinion, however, we should neither "guess at the theory underlying the agency's action . . . [nor] chisel that which must be precise from what the agency has left vague and indecisive," and thus should examine the Board's decision "solely by the grounds invoked by the agency." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (quoting *Sec. and Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947)).

**B. Motion to Remand**

As an initial matter, we must determine whether the Board properly denied what was, in effect, Sinani's motion to remand to the IJ to consider the additional evidence she submitted along

with her appeal to the Board.[1]  Sinani argues that the Board erroneously failed to remand to the IJ so he could consider the additional evidence.  The government responds that, because this evidence was available prior to Sinani's asylum application's submission, the Board properly denied her motion.  The government is correct.

We have explained that "[m]otions to remand or to reopen are generally treated the same," *Ahmed v. Mukasey*, 519 F.3d 579, 586 n.7 (6th Cir. 2008) (citations omitted), and Sinani advances no reason why we should treat them differently here.  "A motion to reopen proceedings *shall* not be granted unless it appears to the Board that [(1)] evidence sought to be offered is material *and* [(2)] was not available *and* [(3)] could not have been discovered or presented at the former hearing."  8 C.F.R. § 1003.2(c)(1) (emphasis added).  Therefore, the Board must find that the evidence satisfies all three requirements before it may remand an asylum seeker's case to the IJ.  *Id.*

Here, Sinani concedes that the evidence she submitted was available, (Sinani Br. 33 ("[T]his evidence was previously available . . . .")), but argues that "the need for this evidence did not become apparent until after the IJ's written decision," (*id.*).  Notwithstanding her inability to understand the need for this evidence, which the government and Board contested, her concession demonstrates that she did not fulfill the requirements of 8 C.F.R. § 1003.2(c)(1), so the Board properly denied her motion to remand.

---

[1] A remand would have been required because the Board cannot engage in fact-finding on appeal.  *See* 8 C.F.R. § 1003.1(d)(3)(iv).

**C. Asylum**

Sinani argues that the Board improperly determined that her asylum application was untimely, and that we have jurisdiction to hear her argument on this issue because "[t]he application of law to undisputed facts is a question of law over which the Court has jurisdiction." (Sinani Br. 34.) The government responds that we lack jurisdiction because (1) application of facts to law is not a legal question that we may review and, in any case, (2) the facts *are* disputed and thus Sinani's argument is inapposite.

Under 8 U.S.C. § 1158(a)(3), "[n]o court shall have jurisdiction to review any determination of the Attorney General" that, among other things, an asylum seeker has "demonstrate[d] by clear and convincing evidence that [his or her asylum] application has been filed within 1 year after the date of the alien's arrival in the United States," *id.* § 1158(a)(2)(B). The asylum seeker must make such a showing before the Attorney General will consider the merits of his or her application for asylum. *Id.* We have modified the jurisdictional bar "to [prohibit] review of asylum applications denied for untimeliness only when the appeal seeks review of discretionary or factual questions, but not when the appeal seeks review of constitutional claims or matters of statutory construction." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006).

Here, there still exist "factual questions" regarding Sinani's date of arrival in the United States. Sinani claims (and testified before the IJ) that she arrived in the United States on October 4, 2003. The Board found her testimony not credible given that there was no departure stamp from France in her passport, and no post-France entry or departure stamps from Albania. The Board thus found that Sinani did not prove by clear and convincing evidence that she arrived in the United

States within one year of applying for asylum. This dispute does not require us to construe what "one year" means or to answer any other question of statutory interpretation. It is instead a disagreement over the facts that apply to the settled terms of the statute. Such disagreement constitutes a "factual question[]," which we do not have jurisdiction to review. *See Almuhtaseb*, 453 F.3d at 748.

We thus dismiss Sinani's asylum claim for lack of jurisdiction, but proceed to consider the remainder of her claims on the merits.

**D. Withholding of Removal**

To qualify for withholding of removal under 8 U.S.C. § 1231(b)(3)(A), an applicant "must demonstrate a clear probability that his [or her] life or freedom would be threatened in the country directed for removal on account of his [or her] race, religion, nationality, membership in a particular social group, or political opinion." *Zhao*, 569 F.3d at 245. While the Attorney General has discretion over whether to grant an applicant asylum, he must grant withholding of removal to an applicant who makes the requisite showing. 8 U.S.C. § 1231(b)(3)(A).

**1. Past Persecution**

To prove that it is more likely than not that her "life or freedom would be threatened" in Albania on account of her political opinion or membership in a particular social group, Sinani may establish past persecution, which would entitle her to a presumption that her life or freedom would be threatened on return to Albania, or show a well-founded fear of future persecution. *See Haider v. Holder*, 595 F.3d 276, 283 (6th Cir. 2010) (citing 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b)(1)(i)). Both parties agree that, because Sinani filed her asylum application before 2005,

the REAL ID Act of 2005 does not apply. So the Board's adverse credibility determination "must be supported by specific reasons . . . [and] must be based on issues that go to the heart of the applicant's claim." *Liti v. Gonzales*, 411 F.3d 631, 637 (6th Cir. 2005) (internal quotation marks and citation omitted).

Sinani argues that the Board incorrectly determined that she was not credible and thus did not establish past persecution. The Board discussed four general areas of inconsistency in finding Sinani not credible: (1) Sinani testified that she never tried to enter the United States prior to her current entry, but she in fact had applied for, and been denied, a visitor's visa; (2) Sinani's first asylum application did not state that she was raped; (3) she did not establish a nexus between her rape and her support of the Democratic Party before the asylum officer, yet she changed her story to establish such a nexus for the IJ hearing; and (4) Sinani's passport showed no departure stamp from France nor entry stamp from Albania in March 2003, suggesting she never returned to Albania after leaving for France. Addressing these problems with Sinani's credibility, the Board stated: "Although some of the inconsistencies mentioned by the Immigration Judge are minor or have been explained, the other discrepancies are sufficient to call into question the respondent's story. Based on the foregoing, we find that the Immigration Judge properly found the respondent has not demonstrated statutory eligibility for asylum or withholding of removal." (Admin. R. 5.) The Board never clarified, however, exactly which inconsistencies it believed were minor, which ones Sinani adequately explained, and which remained unexplained.

The central basis of Sinani's claim here is that Albanian government officials and police opposed her familial ties to and support of the Democratic Party in Albania, so they beat and raped

her on account of her social-group membership and political opinion. The requirement that the inconsistencies "go to the heart" of Sinani's claim allows us to dispose summarily of one of the identified problems with Sinani's argument: Whether Sinani applied for admission to the United States, and whether she lied about this fact, is immaterial to her claim, so it cannot support an adverse credibility determination. *See Liti*, 411 F.3d at 637. However, the other three credibility issues do go to the heart of Sinani's claim. We examine each in turn.

### a. "Physical Abuse" Is Not Inconsistent With "Rape"

The Board found Sinani not credible because she did not specifically use the word "rape" in her asylum application, but only discussed "physical abuse." (*See* Admin. R. 5.)

"Like affirmative inconsistencies, omissions may form the basis of an adverse credibility determination, provided that they are substantially related to the asylum [or withholding] claim." *Liti*, 411 F.3d at 637. However, omissions in an application that do not directly contradict an applicant's subsequent testimony before the IJ may not form the basis of an adverse credibility finding. *Id.* at 637-38. Specifically, "[t]he absence of specific incidents in the application . . . does not give rise to the inference that [an applicant is] incredible." *Id.* at 638. This is because "the circumstances surrounding the application process do not often lend themselves to a perfectly complete and comprehensive recitation of an applicant's claim to asylum or withholding, and . . . holding applicants to such a standard is not only unrealistic but also unfair." *Id.* (ellipses in original) (internal quotation marks and citation omitted); *see also Shkabari*, 427 F.3d at 330 (noting that we do not view as inconsistencies certain "omissions from asylum applications," because we "reject[] requiring asylum seekers to provide [an] exhaustive, detailed list of their encounters of persecution

in an asylum application" (internal quotation marks and citation omitted)). In *Shkabari*, we discussed the sorts of omitted details that do not rise to the level of inconsistencies: for example, failure to mention a particular injury, the degree of harm from persecution, or the intensity of a prosecutory event. 427 F.3d at 330-31.

Sinani's purported inconsistency falls squarely in the box of "particular injury." She described her persecution as resulting from kidnap and physical abuse in her asylum application, (*see* Admin. R. 52 (first version of asylum application), 490 (third version of asylum application), 720 (second version of asylum application)), but described the encounter as rape in her more expanded declaration attached to the second version of her asylum application, (*see id.* at 731), and in her testimony before the asylum officer, (*see id.* at 475), and IJ, (*see id.* at 133). This "omission" is precisely of the sort described in *Liti* and *Shkabari*, for no reasonable interpretation of "physical abuse" would exclude "rape" from its meaning. *See* Merriam-Webster, Webster's Third New International Dictionary: Unabridged 8, 1706, 1882 (1993). As such, the alleged inconsistency is unsupported by substantial evidence and may not ground an adverse credibility determination.

### b. Inadequate Nexus Alleged Before the Asylum Officer

The second basis for the Board's adverse credibility determination was Sinani's purported failure to establish a nexus between her rape and support of the Democratic Party. In so finding, the Board and the IJ relied on the asylum officer's Assessment to Refer ("Assessment") and handwritten notes. Sinani argues that the IJ and Board's admission of and reliance on the asylum officer's handwritten notes was improper. The government responds that the asylum officer's notes were reliable enough to merit credence and admission.

We may affirm the Board's or an IJ's reliance on the Assessment and notes in an adverse credibility determination only when we find them to contain "sufficient indicia of reliability." *Koulibaly*, 541 F.3d at 621. The items submitted—whether Assessment, notes, or asylum-officer testimony—must be sufficiently reliable. *Id.* at 620-21. Thus, the Assessment may be good enough standing alone, *id.* (citing *Yomba v. Attorney Gen.*, 254 F. App'x 900, 904 (3d Cir. 2007)), or it may not be, *id.* at 620 (citing *Singh v. Gonzales*, 403 F.3d 1081, 1089-90 (9th Cir. 2005)); but the more reliable the Assessment, the less the notes or testimony need contribute to establish the Assessment's reliability.

In *Koulibaly*, we did not find the Assessment adequate, so we examined the asylum officer's handwritten notes in conjunction with it. *Id.* at 621. However, we held that the notes were too unreliable to allow the IJ to rely on them in finding the petitioner not credible, pointing specifically to the facts that the notes: (1) "detail[ed] only some of the questions posed, making it difficult to determine what question Koulibaly was answering at many points during the interview"; (2) were not akin to a "transcript"; and (3) did not identify the language of the interview or the administration of an oath before it. *Id.* Finally, we observed that the asylum officer did not testify in support of either his Assessment or the notes' veracity before the IJ. *Id.*

Here, we find the Assessment adequately reliable when examined in conjunction with the asylum officer's notes. The Assessment is relatively detailed. The notes, however, are a mixed bag: While they are numbered, include some questions and answers (as would a transcript), and list Sinani's identification number, the date, and the asylum officer's name on each page, they also contain some variation in handwriting, are difficult to read in places, and are not obviously complete.

But when the Assessment is read in light of these notes, the two together evince adequate indicia of reliability to support the Board and IJ's reliance on them.

Turning to the substance of this inconsistency, we note first that the asylum officer found Sinani entirely credible but denied her application because she did not establish that the police raped her on account of her Democratic Party affiliation. Specifically, he found that "[t]he harm has no nexus to any Protected trait or belief under the INA." (Admin. R. 475.) Before the IJ, however, Sinani articulated a clear nexus: She claimed the police called the mayor *immediately after* raping her and then told her to discontinue her political activities against him. This discrepancy "can[] be viewed as [an] attempt[] by the applicant to enhance [her] claims of persecution," so it adequately grounds the Board's adverse credibility determination against Sinani. *Sylla v. Immigration & Naturalization Serv.*, 388 F.3d 924, 926 (6th Cir. 2004) (internal quotation marks and citation omitted).

For that reason, we find the Board's determination that Sinani was not credible to be supported by substantial evidence. Sinani thus could not show past persecution.

### c. Sinani's Presence in Albania When She Was Allegedly Raped

Because we believe that substantial evidence supported the Board's adverse credibility determination due to Sinani's failure to allege a nexus before the asylum officer, we do not reach the question of whether Sinani's lack of an entry stamp from Albania after her March 2003 trip to France also supports the Board's adverse credibility determination.

## 2. Future Persecution

Because Sinani cannot establish a presumption of future persecution by showing past persecution, we proceed to consider her separate argument that she has well-founded fear of future persecution without the presumption. That argument consists of one sentence: "Even without this presumption, there is more than a one in ten chance that he [sic] will be persecuted." (Sinani Br. 37.) That bare assertion is inadequate to justify reversing the Board's denial of relief. *See In re Brown*, 342 F.3d 620, 633 n.4 (6th Cir. 2003). And Sinani's claim that the Board and IJ did not consider her arguments on this point is inaccurate, for—albeit summarily—the IJ discounted her claim and the Board referenced that denial. Therefore, the Board's rejection of this claim is supported by substantial evidence.

## E. Relief Under CAT

In the alternative, Sinani claims she is entitled to relief under CAT. Under CAT, the government may not deport an individual if "it is more likely than not that [the individual] would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). We do not require the individual to show a nexus, *Almuhtaseb*, 453 F.3d at 751, but the bar is nonetheless very high. Torture is "an extreme form of cruel and inhuman treatment," 8 C.F.R. § 1208.18(a)(2), and is "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted" for several reasons, including punishment, intimidation or coercion, "when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," *Id.* § 1208.18(a)(1). We have held that multiple beatings resulting in a broken bone and the applicant fainting do not rise to the level of torture. *See Shkulaku-*

*Purballori v. Mukasey*, 514 F.3d 499, 501, 503 (6th Cir. 2007). Given this high bar and because we find the Board's adverse credibility determination to be supported by substantial evidence, we affirm the Board's denial of Sinani's CAT claim, which she bases almost entirely on her past persecution.

**F. Humanitarian Asylum**

Sinani argues, lastly, that she is entitled to humanitarian asylum under 8 C.F.R. § 1208.13(b)(1)(iii)(A), or at least should be allowed to present her argument for humanitarian asylum to the Board, so we should remand her petition. However, Sinani raises this argument for the first time on appeal, so we may not consider it. *See Liti*, 411 F.3d at 641.

**III.**

For the foregoing reasons, we **DISMISS** Sinani's conventional and humanitarian asylum claims for lack of jurisdiction, **AFFIRM** the Board's decision as to her withholding and CAT claims, and **DENY** her petition for review.