NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0855n.06

No. 12-3680

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Oct 01, 2013

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| MARIAMA MBAYE, | ) |
| | ) |
| **Petitioner,** | ) ON PETITION FOR REVIEW OF |
| | ) A FINAL ORDER OF THE |
| v. | ) BOARD OF IMMIGRATION |
| | ) APPEALS |
| ERIC H. HOLDER, JR., Attorney | ) |
| General, | ) |
| | ) **O P I N I O N** |
| **Respondent.** | ) |
| | ) |

**Before: MOORE and McKEAGUE, Circuit Judges, and HELMICK, District Judge.**[*]

**KAREN NELSON MOORE, Circuit Judge.** Mariama Mbaye ("Mbaye") petitions from an order of the Board of Immigration Appeals ("BIA") dismissing her appeal from the Immigration Judge's ("IJ") denial of her application for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and withholding of removal under the Convention Against Torture ("CAT"). Specifically, Mbaye argues that the IJ and BIA erred in making an adverse credibility finding and failed to consider whether she was eligible for "humanitarian" asylum. For the reasons that follow, we **DENY** the petition for review.

---

[*]The Honorable Jeffrey J. Helmick, United States District Judge for the Northern District of Ohio, sitting by designation.

**I. BACKGROUND**

Mbaye was born a member of the Wolof ethnic group in Mauritania. Administrative Record ("A.R.") at 454-55 (Hr'g Tr. at 9-10). On April 28, 1989, she and several family members were arrested because they "were blacks" and "the people who live in Mauritania are white." *Id.* Mauritanian soldiers held Mbaye in a military camp before forcibly expelling her from the country. *Id.* at 455-57 (Hr'g Tr. at 10-12). She crossed into Senegal, where she lived in a Red Cross refugee camp before moving to Dakar and working as a domestic servant for a Lebanese family. *Id.* at 457-60 (Hr'g Tr. at 12-15). Mbaye eventually obtained a fraudulent Senegalese passport. *Id.* at 461 (Hr'g Tr. at 16). She traveled to the United States in 2000, and ultimately settled in Cincinnati, Ohio. *Id.* at 461, 464 (Hr'g Tr. at 16, 19).

Mbaye filed her application for asylum on January 10, 2001, claiming she was abused and mistreated because she is ethnically Wolof and black. *Id.* at 433, 436 (Appl. for Asylum at 1, 4). After an asylum officer interviewed Mbaye and found her not credible, *id.* at 310 (Assessment to Refer), the Department of Homeland Security served Mbaye with a notice to appear on the charge that she was subject to removal. *Id.* at 577-78 (Notice to Appear). On January 23, 2007, Mbaye conceded her removability, but renewed her requests for asylum and withholding of removal. *Id.* at 563 (Pleading in Supp. of Pending Mot. for Change of Venue). Mbaye's case proceeded to a hearing before the IJ on March 1, 2010. *Id.* at 446-520 (Hr'g Tr. at 1-75). During the hearing, Mbaye testified that she was held in a military camp and forced to do manual labor. *Id.* at 455 (Hr'g Tr. at 10). While she was held at the camp, she was beaten and burned on her stomach with hot

metal; she also testified that if the captives refused to obey the soldiers, "they will rape you." *Id.* at

456 (Hr'g Tr. at 11). Indeed, Mbaye testified that she was "raped many, many times" by the "whole

military," and that the soldiers "used to be in line and just wait, and this guy, then the next would go,

too." *Id.* at 465, 473 (Hr'g Tr. at 20, 28).

On March 10, 2010, the IJ denied all of Mbaye's claims for relief and ordered her removed

to Mauritania. *See id.* at 183-206 (Oral Dec. of Immigration Ct.). The IJ focused on several

inconsistencies in the record to find Mbaye not credible, and concluded that she had not met her

burden of establishing either past persecution or a well-founded fear of future persecution. The IJ

also found that Mbaye had not met her burden of establishing eligibility for withholding of removal.

On appeal to the BIA, Mbaye argued that the IJ made a faulty credibility determination, and

that her testimony established past persecution. *Id.* at 25-35 (Resp't Br. at 4-14). She also argued

on appeal that she was entitled to asylum as a matter of humanitarian discretion. *Id.* at 35-39 (Resp't

Br. at 14-18). The BIA affirmed the decision of the IJ.[1] *See id.* at 2-5 (BIA Dec.). The BIA initially

concluded that the IJ had properly made an adverse credibility finding. First, the BIA found that

Mbaye's testimony that she had been raped was inconsistent with her application for asylum, which

stated that she had been abused and mistreated but neglected to specify rape. The BIA also reasoned

---

[1]The BIA reversed only the portion of the IJ's decision concluding that Mbaye had not demonstrated that she timely filed her asylum application. A.R. at 3 (BIA Dec. at 2); *see* 8 U.S.C. § 1158(a)(2)(B).

that Mbaye's conflicting explanations[3] for the omission were not persuasive. Second, the BIA

discussed inconsistencies in the record regarding the length of time Mbaye had been confined to the

military camp: she testified at different times that she had been held for three to four weeks or two

or three years. The BIA was unpersuaded by Mbaye's explanation that she had difficulty

remembering long-ago events. Finally, the BIA noted several discrepancies between Mbaye's

application and her testimony regarding her family, such as the number of siblings she had, the name

of her father, and the birthplaces of her son and parents.

In light of these inconsistencies, the BIA next focused on Mbaye's lack of corroborating

documentation. The BIA questioned the authenticity of Mbaye's identification documents, noting

that her certificate of nationality states that it was based on a copy of her birth certificate but that her

birth certificate was not issued until several months after the certificate of nationality. *Id.* at 4 (BIA

Dec. at 3); *id* at 307 (Certificate of Nationality); *id.* at 308 (Birth Certificate). The BIA also observed

that the testimony of two witnesses confirmed her presence in Mauritania and her entry into the

United States, but did not corroborate her claims regarding persecution in the military camps. *Id.*

at 4 (BIA Dec. at 3). Particularly probative to the BIA was the absence of any statement from

Mbaye's sister, held in the camps with her, *see id.* at 475 (Hr'g Tr. at 30), to support her claims. The

---

[3]In her brief before the BIA, Mbaye explains that she was uncomfortable providing information about the rapes until she had the opportunity to speak to a female attorney. A.R. at 31 (Resp't Br. at 10). However, in her hearing before the IJ, Mbaye testified that she told the preparer of her application about the rapes, but the preparer omitted them from the asylum application. *Id.* at 474 (Hr'g Tr. at 29). The BIA found this explanation unconvincing because the asylum officer who conducted Mbaye's initial interview indicated that Mbaye had agreed the application was truthful after it was read back to her in a language she understood. *Id.* at 310 (Assessment to Refer).

BIA also noted that Mbaye's doctor identified injuries that he believed were the result of rape, *see id.* at 531 (Allen Ltr.), but the BIA found that Mbaye had presented no evidence that she was raped on "account of a protected basis." *Id.* at 4 (BIA Dec. at 3). The inconsistencies in combination with a lack of corroborating evidence convinced the BIA that Mbaye was not credible.

Concluding that Mbaye could prove neither past persecution nor a well-founded fear of future persecution, the BIA also found that changed conditions in Mauritania would "rebut any such well-founded fear."[4] *Id.* at 4-5 (BIA Dec. at 3-4). In addition, because Mbaye could not prove past persecution, the BIA found that she was not entitled to humanitarian asylum. Mbaye petitions this court, arguing that the adverse credibility determination was erroneous, and that the evidence she presented proved past persecution. Additionally, she argues that, although country conditions have changed, the case should be remanded for consideration of her humanitarian asylum claim.

## II. ANALYSIS

Under the INA, an alien is eligible for asylum at the discretion of the Attorney General if she qualifies as a refugee, defined as one "who is unable or unwilling to return to . . . [her home country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A). An applicant for asylum must demonstrate that her fear of future persecution is supported by "a reasonable possibility" that she will be persecuted if removed to her country of

---

[4]The BIA also found that Mbaye had waived her claim that she feared being subjected to female genital mutilation because she offered no argument rebutting the IJ's conclusion on appeal. A.R. at 5 (BIA Dec. at 4).

origin. *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994). If an applicant proves past persecution, she is entitled to a presumption that she has a well-founded fear of future persecution, but that presumption may be rebutted by evidence showing a fundamental change in country conditions demonstrating the absence of such a well-founded fear. *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005).

If an applicant is not eligible for asylum, she may seek a grant of withholding of removal under the INA or the CAT. We must "uphold the BIA's determination against withholding the removal of an alien, unless it is 'manifestly contrary to the law.'" *Ndrecaj v. Mukasey*, 522 F.3d 667, 677 (6th Cir. 2008) (quoting *Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir. 2003)). To prove eligibility for withholding of removal under the INA, an alien must demonstrate that "her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.16(b); *see also Shan Sheng Zhao v. Holder*, 569 F.3d 238, 245 (6th Cir. 2009). The burden is on the applicant to demonstrate that "it is more likely than not" that she will be persecuted if returned to her country of origin. 8 C.F.R. § 1208.16(b)(2). Likewise, an applicant for relief under the CAT bears the burden of proving "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2).

We review factual findings and credibility determinations under a substantial-evidence standard, which requires that the BIA's determination be upheld if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Koulibaly v. Mukasey*, 541

F.3d 613, 619 (6th Cir. 2008) (quoting *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004)). Under this deferential standard, "the test is not whether this Court might have decided differently but whether this Court is compelled to conclude that the [BIA] erred." *Dorosh v. Ashcroft*, 398 F.3d 379, 383 (6th Cir. 2004). Any legal conclusions, however, are reviewed de novo. *Zhao*, 569 F.3d at 246. "Because the BIA did not summarily affirm or adopt the IJ's reasoning and provided an explanation for its decision, we review the BIA's decision as the final agency determination." *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1047 (6th Cir. 2007).

Mbaye argues that the BIA's adverse credibility determination was not supported by substantial evidence, and that her testimony was sufficient to meet her burden of demonstrating eligibility for asylum or withholding of removal. *See Mapouya v. Gonzales*, 487 F.3d 396, 406 (6th Cir. 2007) ("The testimony of an applicant, if credible, may be sufficient to sustain the burden of proof without corroboration."). An adverse credibility finding "must be supported by specific reasons" that "go to the heart of the applicant's claim."[5] *Liti v. Gonzales*, 411 F.3d 631, 637 (6th Cir. 2005). An adverse finding "cannot be based on an irrelevant inconsistency." *Id.* And inconsistencies that do not bolster an applicant's claims do not bear on that applicant's credibility. *Mapouya*, 487 F.3d at 407. In this case, the BIA based its adverse credibility determination on three specific and unexplained discrepancies in the record: the omission of a claim of rape in the asylum application, inconsistent details about Mbaye's family, and testimony that Mbaye was confined to

---

[5]Mbaye filed her initial asylum application in 2001, prior to the Real ID Act's May 11, 2005 effective date. Thus, the provisions of the Act pertaining to credibility determinations do not apply. *See* Real ID Act of 2005, Pub. L. No. 109-13, § 101(h)(2), 119 Stat. 231, 305 (2005).

military camps for varying lengths of time. Because Mbaye's inconsistent testimony regarding the length of her confinement provides substantial evidence to support the BIA's adverse credibility finding, we need not decide whether the other discrepancies support such a finding.

At different times during Mbaye's hearing, she gave widely varying estimates of the time she spent in captivity. At one time, she claimed she was held in the military camps for "[t]hree to four weeks." A.R. at 456 (Hr'g Tr. at 11). At another time, however, she claimed that she "was held for two years in Mauritania before [she was] expelled to Senegal." *Id.* at 499 (Hr'g Tr. at 54). And later in the same hearing she stated that "[f]rom the time they took us from our house to take us to Senegal is three years." *Id.* at 515 (Hr'g Tr. at 70). Mbaye attempted to explain the inconsistency as a result of her failing memory: "It's been 21 years and I cannot recall exactly . . . how long I was in those camps for a long time." *Id.* However, the wide variance between a few weeks and several years was a reasonable and substantial basis upon which the BIA could base its decision to discredit her explanation. *See Sow v. Holder*, 444 F. App'x 871, 873 (6th Cir. 2011) (concluding that inconsistent accounts of whether an applicant's children suffered mistreatment along with her was a "material difference" that "by itself support[ed] the [BIA's] decision"); *Grijalva v. Gonzales*, 212 F. App'x 541, 545 (6th Cir. 2007) (basing an adverse credibility determination on accounts of when the applicant was gang raped that varied by several years). Furthermore, these inconsistencies go to the heart of Mbaye's claim that she suffered past persecution at the military camp in Mauritania. On the basis of this significant discrepancy alone, we are not compelled to conclude that the BIA erred in making its adverse credibility finding. *See Chun He Li v. Ashcroft*, 378 F.3d 959, 964 (9th Cir.

2004) ("[S]o long as one of the identified grounds is supported by substantial evidence and goes to the heart of [the applicant's] claim of persecution, we are bound to accept the [BIA's] adverse credibility finding.").

Although we need not decide the issue, we are concerned by the BIA's assumption that Mbaye's failure to claim rape on her asylum application is a "material omission." A.R. at 3 (BIA Dec. at 2). There is no literal discrepancy between a claim of mistreatment and a claim of rape because rape is a form of mistreatment. *See Sinani v. Holder*, 418 F. App'x 475, 479 (6th Cir. 2011) (reasoning that "no reasonable interpretation of 'physical abuse' would exclude 'rape' from its meaning"). Furthermore, omissions of particular injuries from asylum applications are insufficient bases for adverse credibility findings when the omissions "do not directly contradict an applicant's subsequent testimony." *Id.*; *see also Koulibaly*, 541 F.3d at 622-24 (finding a failure to mention a hospital stay after the applicant was detained and beaten to be a mere omission insufficient to support an adverse credibility finding). In some cases, omissions are immaterial because "the circumstances surrounding the application process do not often lend themselves to a perfectly complete and comprehensive recitation of an applicant's claim to asylum or withholding, and holding applicants to such a standard is not only unrealistic but also unfair." *Liti*, 411 F.3d at 638 (quoting *Secaida-Rosales v. INS*, 331 F.3d 297, 308 (2d Cir. 2003)). To consider any additional detail developed during a hearing an "inconsistency" would imperil any asylum applicant who participated in the legal process provided to her. Therefore, although we find that the BIA's adverse credibility finding was

supported by substantial evidence, we find troubling the assumption that a failure to claim rape is in all cases a "material omission."

Because the BIA discredited Mbaye's testimony, it correctly considered whether her corroborating evidence was sufficient to support a finding of refugee status. Testimony that Mbaye was living in Mauritania prior to 1989 and that she arrived in the United States in 2000 sheds no light on her claims of persecution between 1989 and 1992. And Mbaye failed to present any documentation from her sister to corroborate their treatment while in the military camps, even though she was in contact with her sister living in France. *See Dorosh*, 398 F.3d at 383 (finding that the BIA could reasonably expect the applicant to provide an affidavit from her mother, who was living abroad but kept in contact with the applicant, to corroborate the applicant's ill treatment). The unreliability of Mbaye's identification documents also undermines her claims by casting doubt on her Mauritanian nationality. *See Sow*, 444 F. App'x at 875 (finding some doubt as to whether the applicant was Mauritanian when she could not explain how she obtained copies of her identity card). Finally, the letter from Mbaye's doctor describing her physical and psychological injuries and attributing them to "sexual abuse in the past" is not evidence that Mbaye was persecuted on the basis of her race. Thus, substantial evidence supports the BIA's determination that Mbaye failed to meet her burden of proving that she was subject to past persecution.

Mbaye concedes on appeal that the BIA's finding of changed country conditions in Mauritania is "relatively-unassailable." Pet'r Br. at 36. Thus, Mbaye implicitly admits that she cannot prove a well-founded fear of future persecution. Instead, she argues that she is entitled to

humanitarian asylum. *See* 8 C.F.R. § 1208.13(b)(1)(iii) (allowing a discretionary grant of asylum to applicants who cannot prove a well-founded fear of future persecution but can establish "a reasonable probability that [they] may suffer other serious harm upon removal to that country"). However, because we hold that Mbaye was unable to prove past persecution, it is unnecessary to remand to allow the BIA to address her eligibility for humanitarian asylum. *See Liti*, 411 F.3d at 641-42 (noting that humanitarian asylum "provides a second avenue of relief for *victims of past persecution* whose fear of future persecution on account of a protected ground has been rebutted by evidence of changed country conditions or of safe harbors within his or her home country" (quoting *Belishta v. Ashcroft*, 378 F.3d 1078, 1081 (9th Cir. 2004)) (emphasis added). Nor is she eligible for withholding of removal under the more stringent INA and CAT standards requiring her to prove that it is more likely than not that she will be persecuted or tortured upon return to Mauritania. *See Liti*, 411 F.3d at 640-41.

### III. CONCLUSION

For the reasons stated above, we **DENY** the petition for review.