**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2195

_____

JOEL DE JESUS ALARCON ORTEGA,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of a Decision
of Board of Immigration Appeals,
(Agency No. A206-681-263)
Immigration Judge: Steven A. Morley

_____

Submitted under Third Circuit L.A.R. 34.1(a)
April 12, 2022

_____

Before: AMBRO, SCIRICA, TRAXLER*, Circuit Judges

(Opinion filed:  May 20, 2022)

_____

OPINION**

_____

_____

\* The Honorable William B. Traxler, Jr., Senior Circuit Judge, United States Court of Appeals for the Fourth Circuit, sitting by designation.

\*\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

TRAXLER, <u>Circuit Judge</u>

Petitioner Joel de Jesus Alarcon Ortega challenges the decisions of the Immigration Judge (IJ) and the Board of Immigration Appeals (BIA) denying his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Finding no factual or legal error in the agency's decisions, we will deny the petition.

**I.**

Alarcon is a 34-year-old native and citizen of Guatemala who first entered the United States without authorization around 2002. He remained here until he voluntarily returned to Guatemala around 2011. Alarcon returned to the United States in 2014, applied for admission at the Calexico West port-of-entry in Calexico, California, and admitted in an interview that he did not have legal authority to enter the United States. Nevertheless, he claimed that he should be admitted to the United States because he feared persecution or torture in his native Guatemala. Accordingly, and upon Alarcon's indication that he would be residing in Pennsylvania following his release from custody, Alarcon was served with a notice to appear before the immigration court in Philadelphia. AR 509. In 2018, the IJ held a merits hearing regarding Alarcon's claims.

During the merits hearing, Alarcon testified that many members of his immediate family—including his father and mother, two of his ten siblings, his child, and the mother of his child—still reside in Guatemala. Alarcon also testified that, despite his immediate family's safety, more distant relatives of his had allegedly been persecuted because of his family's connections to the Guatemalan government.

2

The family connections to the government are (1) a man of unspecified relation to Alarcon named Maximiliano Samayoa Guerra, who was nominated as Military Commissioner of Alarcon's hometown, Concepcion Las Minas; and (2) Alarcon's second cousin, Carlos Leonardo Solares Barrera, who allegedly served in the violent Guatemalan special forces as a "Kaibil," and who was eventually killed by masked men in 2000 on his way home from working in the fields. According to Alarcon, his uncle Jose Maria Alarcon and three of Carlos' children were also targeted for their familial connection to Maximiliano and Carlos. Alarcon's uncle, Jose, died in 1986 from firearms wounds; Carlos' daughter, Elvia Hortencia Solares Samayoa, died in 2009 in a motorcycle accident; and Carlos' two sons, Juan Solares Samayoa and Anibal Solares Samayoa, survived attacks in 2005 and 2008 before escaping to the United States. Alarcon could not identify any of his family's malefactors.

Alarcon testified that, despite these incidents, he voluntarily returned to Guatemala in 2011, believing he had nothing to fear. Alarcon said that he began receiving anonymous extortionist phone calls vaguely threatening him harm in 2013. Alarcon ignored the phone calls and never gave anyone any money. Then, in September of 2013, Alarcon was hospitalized following a traffic accident in which he was allegedly forced off the road by a car attempting to pass him on the right. He did not report the accident to the police. Several months after the accident, Alarcon received phone calls demanding money, and threats that he "knew already what would happen" if he did not pay. Alarcon testified that he believed the traffic accident and the extortionist phone calls were based on his family connections to the Guatemalan military. But there had been no mention in

3

the phone calls of his family connections to the Guatemalan military, nor threats or specific references to his traffic accident.

Although the IJ found that Alarcon testified in a generally credible manner and provided corroboration, the IJ ultimately denied all of Alarcon's claims. The IJ determined that Alarcon's asylum and withholding-of-removal claims ultimately failed because Alarcon did not establish either (1) a nexus in objective fact between his family's political connections and the harm he personally suffered, or (2) an objectively reasonable belief that he would be persecuted on a protected ground in the future. The IJ similarly held that Alarcon's CAT claim failed because Alarcon did not establish that he would more likely than not be tortured, or even be subject to a greater risk of criminal harm in Guatemala than anyone else.

During Alarcon's subsequent administrative appeal, the BIA found no clear error in the IJ's factual determinations regarding any of its grounds for denying Alarcon's claims. The BIA also rejected Alarcon's procedural challenges to the IJ's decision, finding that the IJ did not deny Alarcon's claims due to concerns about his credibility or failure to corroborate his testimony.

## II.

"We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review a final order of removal issued by the BIA."[†] *Huang v. Att'y Gen.*, 620 F.3d 372, 379 (3d Cir. 2010). And

---

[†] Although respondent contends that petitioner has forfeited any appeal regarding his asylum, withholding-of-removal, and CAT claims, we find petitioner's brief to be minimally sufficient to preserve the issues.

while we review the BIA and IJ's legal conclusions de novo, we review the agency's factual determinations under the deferential substantial-evidence standard, only disturbing these determinations when a reasonable factfinder would be compelled to reach a different conclusion. *Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 590 (3d Cir. 2011).

Generally speaking, the Attorney General and his delegates may grant asylum to any alien who qualifies as a refugee under the Immigration and Nationality Act (INA). *Espinosa-Cortez v. Att'y Gen.*, 607 F.3d 101, 107 (3d Cir. 2010). To qualify as a refugee, an alien must show an inability or unwillingness to return to his country of origin because of "persecution or a well-founded fear of persecution on account of" one of the statutorily protected grounds—i.e., "race, religion, nationality, membership in a particular social group, or political opinion, [whether imputed or actual]." 8 U.S.C. § 1101(a)(42). Critically, this means those applying for asylum must show a nexus between any harm, whether sustained in the past or reasonably feared to happen in the future, and a protected ground. *See Ndayshimiye v. Att'y Gen.*, 557 F.3d 124, 128-29 (3d Cir. 2009). This nexus must establish that a protected ground "was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i).

## A.

In the present case, Alarcon contends that the BIA and IJ erred in rejecting his asylum claim for lack of nexus between his past harm and (1) his membership in the particular social group consisting of family members of former commissioners in Guatemala's military; or (2) imputed political opinions attributable to him due to his

5

family members' connections to the Guatemalan military. After carefully reviewing the record, we agree that Alarcon has not presented sufficient evidence to show that either his particular social group or an imputed political opinion was at least one of his persecutors' central motivations.

Contrary to Alarcon's arguments, the IJ did not rule against him because he failed to provide corroborating evidence. Rather, the IJ concluded that Alarcon's evidence was insufficient to show past persecution on account of a protected ground. Although it is clear that a credible applicant's testimony may *sometimes* be sufficient to satisfy his burden of proof, 8 C.F.R. § 1208.13(a), this does not mean that a credible applicant is entitled to a favorable ruling. The applicant must still present sufficient evidence supporting his belief that he was persecuted because of a protected ground. *Ndayshimiye*, 557 F.3d at 133.

In our view, Alarcon's credible testimony does *not* establish the required nexus. His evidence failed to establish the identity or group association of his persecutors, and he provided no evidence attributable to his persecutors or other evidence regarding their motives. While Alarcon contends that he is not required to supply his persecutors' identities or direct evidence regarding their motives, he still "bear[s] the burden of providing some evidence of a motive based on a statutorily protected ground, direct or circumstantial." *Ndayshimiye*, 557 F.3d at 131 (cleaned up). Alarcon's inability to provide direct evidence forces us to look to circumstantial evidence, such as the time, place, and manner of the harm. *See Espinosa-Cortez*, 607 F.3d at 109. And critically, there is a dearth of such circumstantial evidence in the record.

In the absence of direct or circumstantial evidence regarding his persecutors' motives in causing his traffic accident and launching extortionist threats against him, Alarcon instead relies upon stories of family misfortune. And yet, of the relatives mentioned, none were confronted with demands for money as Alarcon was. In fact, only one relative's harm bears any passing similarity to Alarcon's, and that is by virtue of it being a traffic accident. Any further parallel Alarcon may want us to draw regarding nexus is cut off by a lack of evidence. There is nothing showing that his relatives were harmed on account of their association with the Guatemalan military, nor is there any evidence connecting the threats against Alarcon to the harm that befell his relatives. Because the evidence does not compel us to find a nexus between Alarcon's past harm and a protected ground, we find no error in the BIA and IJ's rejection of the claim.

**B.**

Because Alarcon did not prove past persecution on account of a protected ground, he is required to prove a subjectively genuine and objectively reasonable fear of future persecution. *Nsimba v. Att'y Gen.*, 21 F.4th 244, 247 (3d Cir. 2021). While a favorable finding of credibility will satisfy the subjective prong, an applicant must still establish a basis in objective fact for the claimed nexus between a protected ground and the probability of future harm. *Id.* at 247 n.20. In the present case, Alarcon has satisfied only the subjective prong. We will therefore deny his claim of a well-founded fear of future persecution.

Although an applicant's credible testimony may suffice to establish an objective fear of future persecution, such testimony must also be "persuasive" and "specific."

*Lukwago v. Ashcroft*, 329 F.3d 157, 177 (3d Cir. 2003). Of course, an objective basis may also be proved through documentary or expert evidence. *Id.* Regardless of the form presented, we look for evidence that, on account of a protected ground, the applicant will be (1) singled out for persecution upon return to his home country, or (2) that there is a pattern or practice of persecuting similarly situated individuals in the applicant's home country. *Ghebrehiwot v. Att'y Gen.*, 467 F.3d 344, 351 (3d Cir. 2006); 8 C.F.R. § 1208.13(b)(2)(iii)(A). To establish a pattern or practice, the applicant must show that the persecution because of a protected ground is "systematic, pervasive, or organized." *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005) (cleaned up), *superseded in unrelated part by* 8 U.S.C. § 1158(b)(1)(B)(i).

The record, formed in large part by Alarcon's own credible testimony, does not sufficiently establish a basis for his conclusory fear that he will be singled out for persecution because of his family's connections to the Guatemalan military, or a political opinion attributable to him on account of his familial ties. Alarcon's evidence does not establish a systematic, pervasive, or organized pattern of persecution suffered by families with connections to the Guatemalan military. Any harm suffered by his more distant relatives is undercut by the complete safety of his immediate family. *See id.* ("[W]hen family members remain in petitioner's native country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of petitioner's well-founded fear of future persecution is diminished."). We therefore reject Alarcon's challenge to the denial of his asylum claim.

**III.**

8

Withholding-of-removal claims share the same elements as asylum claims, but at a higher burden of proof. *Sunuwar v. Att'y Gen.*, 989 F.3d 239, 244 n.2 (3d Cir. 2021). We therefore deny Alarcon's withholding-of-removal claims because he did not carry his burden of proof for his asylum claims.

**IV.**

Alarcon petitions for protection under the CAT, claiming that he will be subject to tortured if he is removed to his native Guatemala. He further claims that the IJ and BIA misapplied the law and did not review the record in its entirety, and he revives his unavailing allegations that his application was denied for lack of corroborative evidence. We find that the IJ and the BIA correctly articulated the statutory definition of torture and correctly concluded that Alarcon did not satisfy his burden of proof.

To establish a CAT claim, an applicant must show that it is "more likely than not that he . . . would be tortured if removed to the proposed country of removal." *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017) (cleaned up). Torture is "an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 1208.18(a)(2). The Third Circuit has explained that for an act to constitute torture,

> it must (1) cause severe physical or mental pain or suffering, (2) be intentionally inflicted, (3) be done for an illicit or proscribed purpose, (4) occur by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim, and (5) not arise from lawful sanctions.

*Guzman Orellana v. Att'y Gen.*, 956 F.3d 171, 181 (3d Cir. 2020). Evaluating the likelihood of future torture is a mixed question of law and fact which requires the IJ to

9

"address two questions: (1) what is likely to happen if the petitioner is removed; and (2) does what is likely to happen amount to the legal definition of torture?" *Myrie*, 855 F.3d at 516 (cleaned up). The first of these questions is factual, and we review such determinations for clear error. *Id.* The second of these questions is legal, and we review the IJ and BIA's conclusions therein *de novo*. *Id.*

From the record, there are only two events particular to Alarcon that he could claim evidence past torture: (1) his traffic accident, and (2) the extortionist phone calls. Based on the evidence, Alarcon's traffic accident seems to have been just that: an accident. Alarcon has not produced sufficient testimony for us to conclude that the other driver *intentionally inflicted* the resulting injuries on him. Moreover, the extortionist phone calls did not constitute torture because Alarcon has not established that he endured *severe mental or physical pain or suffering* because of them. After all, Alarcon did not find the phone calls threatening enough to pay the extortionists or resort to the police. And even though Alarcon claims that he believes there is a link between the traffic accident and the extortionist phone calls he received, such a belief is not justified by the record as a whole. Alarcon has not provided any documentary evidence suggesting that there is a pattern or practice of extortionists using intentionally inflicted traffic accidents to harm those who refuse their demands. Nor has Alarcon established any link through his testimony. In fact, the extortionists did not say anything about his accident or threaten him with any specific harm, except for a vague intimation that he "already knew what would happen," delivered only in the subsequent extortionist threats that came several months after his traffic accident. Such vague threats received so long after his traffic

10

accident are not enough to show that Alarcon has suffered past torture due to extortion. *Cf. Herrera-Reyes v. Att'y Gen.*, 952 F.3d 101, 108 (3d Cir. 2020) (explaining that unfulfilled threats must be sufficiently "concrete and menacing" in the "full record" to pose the "severe affront to the petitioner's life or freedom" necessary to satisfy a claim of past persecution in the asylum context) (cleaned up).

Having disposed of the possibility of any past harm qualifying as torture, we turn to the question of whether it is more likely than not that Alarcon will suffer torture upon his removal to Guatemala. Here, as before, Alarcon fails to meet his burden. He has received no further threats since fleeing Guatemala, nor have his family members *who still reside in Guatemala* suffered any fallout as a result of his decision not to pay the extortionists. Alarcon has alleged that he fears deportation to a country rife with generalized criminality, but he has not provided any documentary country-conditions evidence or other evidence that suggests he will be singled out from the general population for torture. Absent any individualized evidence that Alarcon is more likely than not to be tortured, his speculative fear does not merit protection under the CAT. *See Zubeda v. Ashcroft*, 333 F.3d 463, 478 (3d Cir. 2003).

## V.

Alarcon next alleges, in a conclusory fashion, that the IJ (1) was biased against him during his immigration proceedings, and (2) ruled against his claims for lack of corroborative evidence without giving him the opportunity to provide his corroborative evidence. We review *de novo* Alarcon's allegations that he was denied due process of law, *Abulashvili v. Att'y Gen.*, 663 F.3d 197, 207 (3d Cir. 2011).

11

"It has been established for more than a century that aliens are entitled under the Fifth Amendment to due process of law in removal proceedings." *Muhanna v. Gonzales*, 399 F.3d 582, 587 (3d Cir. 2005). In the immigration context, due process requires "factfinding based on a record produced before the decisionmaker and disclosed to him or her;" (2) an opportunity for the alien "to make arguments on his or her own behalf;" and (3) "an individualized determination" of the alien's interests. *Id.* (cleaned up).

Here, the record reveals no apparent bias on the part of the IJ, who found Alarcon's testimony credible. Moreover, there is no evidence that Alarcon was denied the opportunity to present evidence in support of his claims. Rather, the IJ found that his testimony was insufficient to prove his claims. Accordingly, we are satisfied that Alarcon was afforded fair removal proceedings. We thus deny Alarcon's due-process challenges.

**VI.**

For the foregoing reasons, we will deny the petition for review.